## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH DAKOTA
## SOUTHERN DIVISION

| | |
|---|---|
| BEEF PRODUCTS, INC., BPI TECHNOLOGY, INC. and FREEZING MACHINES, INC., | CIV. 12 -4183 |
| Plaintiffs, | |
| vs. | |
| AMERICAN BROADCASTING COMPANIES, INC., ABC NEWS, INC., DIANE SAWYER, JIM AVILA, DAVID KERLEY, GERALD ZIRNSTEIN, CARL CUSTER, and KIT FOSHEE, | **BRIEF IN SUPPORT OF CUSTER AND ZIRNSTEIN'S MOTION TO DIMSISS** |
| Defendants. | |

The above-named Defendants, Gerald Zirnstein and Carl Custer, by and through their undersigned counsel of record, hereby respectfully submit the following brief in support of their Motion to Dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(6):

## INTRODUCTION AND BACKGROUND

Zirnstein and Custer are microbiologists and former employees of a division of the United States Department of Agriculture ("USDA") – Food Safety Inspection Service ("FSIS"). (Complaint, ¶¶ 36-37.) Zirnstein is a citizen of Virginia and Custer is a citizen of Maryland. (*Id.*) Despite the length of the Complaint, the only allegation against Zirnstein and Custer is that they gave one interview each to ABC regarding a "finely textured beef" product sold by BPI and

others.  (*Id.*, Exs. 2-12; Zirnstein Affidavit, ¶ 8; Custer Affidavit, ¶ 4. [1])  Plaintiff BPI[2] does not and could not allege that those interviews took place in South Dakota.  (*See generally*, Complaint; *accord* Custer Affidavit, ¶ 1 (interview took place in Washington, D.C.); Zirnstein Affidavit, ¶ 1 (interview took place in Virginia).)

The primary allegation in the Complaint is that Defendants committed various torts by describing BPI's finely textured beef product – "lean, finely textured beef" ("LFTB") – as "pink slime."  (*See generally*, Complaint, Count I and, *e.g.*, ¶ 130.)  This descriptor was coined over a decade ago by Zirnstein in a 2002 e-mail to Custer which was later obtained by the New York Times and quoted in a 2009 article.  (Zirnstein Affidavit, ¶¶ 4-5; a copy of the New York Times article is attached as Exhibit 1 to the Zirnstein Affidavit.)  The 2009 New York Times article quoted other statements from the same e-mail exchange:

> Gerald Zirnstein [] called the processed beef "pink slime" in a 2002 e-mail message to colleagues and said, "I do not consider the stuff to be ground beef, and I consider allowing it in ground beef to be a form of fraudulent labeling."

(*Id.*)  Though Custer and Zirnstein were identified by name in the New York Times piece, no legal action was taken against them by BPI at that time.  (Zirnstein Affidavit, ¶ 6.)  It was not until the above-described statements were repeated in interviews over two years later with ABC that Zirnstein and Custer were sued by BPI, and the claims against them largely mirror the contents of the internal USDA e-mail from 2002 that was quoted in the New York Times.  (*See, e.g.*, Complaint, Counts 1, 10, 2, 11, 19, 23, 5, 14.)

---

[1] The Affidavits of Carl Custer and Gerald Zirnstein are filed contemporaneously herewith.  As explained in greater detail below, the Court may consider material from outside the four corners of the Complaint in ruling on a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

[2] Zirnstein and Custer join in ABC's motion to dismiss plaintiffs BPI Technology, Inc. and Freezing Machines, Inc., on the basis that they are not real parties in interest to the case.  This brief therefore refers to BPI as the party asserting the claims for relief.

A fair reading of the Complaint is that BPI's true gripe is <u>not</u> with the statements made by Zirnstein and Custer, but with the manner in which those statements were allegedly used by ABC as a jumping-off point for a series of stories that allegedly harmed BPI, including the airing of a list of BPI's customers who continued to sell BPI's product. (*See, e.g.*, Complaint, ¶¶ 15-17.) BPI does not claim Custer or Zirnstein helped orchestrate ABC's alleged "prolonged attack" on BPI and its customers, however. Indeed, as BPI's counsel explained at a press conference announcing the filing of the Complaint:

> ***Prior to this onslaught by ABC News starting in March of this year, <u>there had been earlier articles</u> – a smattering of them over a time <u>that had used derogatory terms like pink slime</u> but it was a one off type publication*** which we did not believe did significant harm to our company. Just so you know – this is a responsible company. We're not going to go out and sue everybody under the sun who says something about our company we don't like. ***<u>The only reason we have sued ABC is they made a choice to turn this into this sustained long running repetitive conduct that has decimated the product in the marketplace</u>***. If they hadn't done that—if they had run a one day story or a two day story and so our product could still have survived well in the marketplace, we probably would have overlooked that but that's not what happened here. We sued the company that took our product and subjected it to this long running prolonged night after night repeating the false statements and then developing a black list to run our customers off and that is why we haven't run out and tried to sue – we haven't tried to sue every news organization that ever used a term that we didn't like.
>
> *            *            *
>
> If it could have worked out that ABC had simply ran a story that was not right and we asked them to correct it and they would have retracted it ***or even if they didn't retract one story if they hadn't done this sustained, prolonged, night after night campaign and then combined it with attacking our customers*** – this company is just not in the business of filing lawsuits—that's not what they are about.

(*See* 9/13/12 Press Conference by BPI's counsel, available at BPI's website www.beefisbeef.com last visited 10/18/12 (Emphasis added).)[3]  Thus, BPI admits that if ABC had used Custer and

---

[3]  Though the press conference is available online, Zirnstein and Custer also have physically filed an electronic copy obtained from BPI's website as an exhibit to the Affidavit of Vince M. Roche, with the Clerk's office. BPI's counsel's statements, of course, constitute admissions by BPI pursuant to Fed. R. Evid. 801(d)(2).

Zirnstein's statement in the same manner as the New York Times – rather than in a series of "sustained long running" reports – then BPI would not be suing Custer and Zirnstein.

In sum, BPI asks the Court to assert personal jurisdiction over Zirnstein and Custer for statements that: (a) were made in single interviews outside of South Dakota; (b) did not mention BPI specifically; (c) were originally published ten years ago in privileged, internal USDA/FSIS communications; and (d) previously were widely disseminated, most notably in a 2009 New York Times article, without any legal action by BPI. Finally, and most importantly, BPI admits that ABC's use of the statements is what allegedly harmed BPI and triggered this lawsuit – not the statements themselves. There is nothing in the Complaint or common sense to suggest that Zirnstein and Custer could have reasonably foreseen being haled into court in South Dakota based on the use ABC allegedly made of their statements about finely-textured beef products.[4] Under such circumstances, as explained more fully below, an exercise of personal jurisdiction over these "bit players" in this battle between BPI and ABC would be wholly inconsistent with the Due Process Clause.

## ARGUMENT

Zirnstein and Custer move to dismiss Plaintiffs' Complaint on two basic grounds. First, the Complaint fails to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). To avoid substantial repetition, Zirnstein and Custer adopt and incorporate the ABC Defendants' arguments for dismissal pursuant to Rule 12(b)(6). Even if the Complaint stated some claim upon which relief could be granted, however, personal jurisdiction over Custer and Zirnstein is lacking, and the Complaint must be dismissed as against them pursuant to Fed. R. Civ. P. 12(b)(2). The personal jurisdiction argument is the focus of this Brief.

---

[4] Zirnstein and Custer dispute that ABC News engaged in any campaign to harm BPI. But even accepting BPI's allegations as true, there is nothing to support an exercise of personal jurisdiction over Zirnstein or Custer.

## I.     GOVERNING LEGAL STANDARD

The applicable standard for a motion to dismiss for lack of personal jurisdiction is well-known.  As this Court recently explained:

> A federal court may assume jurisdiction over a non-resident to the extent permitted by the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment. *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir. 1994).  Because South Dakota applies its long-arm statute to the fullest extent permitted under the Fourteenth Amendment, the Court's exercise of personal jurisdiction need only comply with the requirements of due process. *Id.*

*SFRL, Inc. v. Galena State Bank & Trust Co.*, 2011 WL 4479065, at *1 (D.S.D. Sept. 22, 2011).

To withstand a motion to dismiss for lack of personal jurisdiction, the plaintiff has the burden of making a prima facie showing that the personal jurisdictional requirements have been met. *Id.*  "This prima facie showing must be tested, not by the complaint alone, but by the affidavits and exhibits presented with the motion to dismiss and in opposition to the motion to dismiss." *Id.* (citing *Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 259–260 (8th Cir.1974)).  "When conclusory allegations in a complaint are contested and no factual foundation is supplied, the conclusory allegations are insufficient to confer personal jurisdiction over a nonresident defendant." *Id.* (citing *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072–1073 (8th Cir. 2004)).

"Due process requires minimum contacts between a non-resident defendant and the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Dever*, 380 F.3d at 1073.  The Supreme Court has set forth two theories for evaluating minimum contacts:  general jurisdiction and specific jurisdiction. *Id.*  Only the latter is possible here, and is "viable only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state." *Id.*

"Sufficient contacts exist when 'the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there.'" *Digi–Tel Holdings, Inc.*, 89 F.3d 519, 522 (8th Cir. 1996) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, (1980)). "In assessing the defendant's reasonable anticipation, there must be 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp.*, 471 U.S. at 475; *accord J. McIntyre Mach. Ltd. v. Nicastro*, 131 S. Ct. 2780, 2788 (2011) (defendant must specifically target forum state for personal jurisdiction to lie).

The Eighth Circuit uses a five-part test to determine whether a defendant should reasonably anticipate being haled into court in a particular state:

> (1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts with the forum; (3) the relation of the cause of action to these contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

*Digi–Tel Holdings, Inc.*, 89 F.3d at 522–23.[5] "The latter two factors are secondary and of less importance than the first three factors and the third factor—the relation of the cause of action to the contacts—applies only in the specific jurisdiction context and is immaterial in a general jurisdictional inquiry." *SFRL, Inc.*, 2011 WL 4479065, at *2 (citations omitted). The Court may consider the first three factors together. *Id.* (citing *Digi–Tel Holdings, Inc.*, 89 F.3d at 523.)

---

[5] This familiar five-part test apparently is still viable following the Supreme Court's 2011 decision in *J. McIntyre. See Pangaea, Inc. v. Flying Burrito, LLC*, 647 F.3d 741, 746, n.4 (8th Cir. 2011). Nonetheless, the more restrictive approach to personal jurisdiction announced in *J. McIntyre* cautions against an expansive application of the five-factor test. *See id.* at 749, n.5.

In addition to the five-part test, the Eighth Circuit looks in a defamation case to the "effects" test first developed in *Calder v. Jones*, 465 U.S. 783 (1984). *See Johnson v. Arden*, 614 F.3d 785, 796-97 (8th Cir. 2010) ("we have used the *Calder* test merely as an additional factor to consider when evaluating a defendant's relevant contacts with the forum state . . . In relying on *Calder*, we do not abandon the five-part test.") (citations omitted). The *Calder* test, however, is not an independent basis for establishing jurisdiction outside of the familiar, five-part test outlined above, and is narrowly construed. *Id.*

As noted above, the Court is not limited to the four-corners of the Complaint in considering a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. Rather, the Court may properly consider affidavits and exhibits thereto in conducting its analysis. Here, the undisputed record – and BPI's own admissions – preclude a finding of personal jurisdiction over Zirnstein and Custer.

## II.     PERSONAL JURISDICTION OVER CUSTER AND ZIRNSTEIN IS ABSENT

Custer and Zirnstein gave one interview each to ABC, neither of which took place in South Dakota. While the Supreme Court has held that it may be consistent with due process <u>for journalists</u> to be subject to personal jurisdiction in the state where a defamation plaintiff lives, *see Calder v. Jones*, 465 U.S. 783 (1984), courts have declined to extend the rule to journalists' sources. *See, e.g.*, *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994) (no personal jurisdiction over defendants who had been interviewed by a journalist and provided quotes that were used in an allegedly defamatory article); *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201 (1st Cir. 1994) (no personal jurisdiction over defendant who had been called by reporter from forum state and made remarks concerning defendant that were published in the forum state); *Madara v. Hall*, 916 F.2d 1510 (11th Cir. 1990) (no jurisdiction in Florida when New York defendant had given

telephone interview to a California-based magazine, despite the fact that the magazine circulated in Florida); *Davis v. Simon,* 963 N.E.2d 46 (Ind. App. 2012) (holding that California attorney who had spoken to Indiana news organization concerning the plaintiffs, who were Indiana residents, was not subject to jurisdiction in Indiana); *see also Sack on Defamation: Libel, Slander & Related Problems*, 15:1.3 (4th Ed. 2010). Applying the Eighth Circuit's five-part test here leads to the same result.

### A.    The Quantity Of Contacts Does Not Support Jurisdiction

The "quantity of contacts" factor weighs heavily in favor of Zirnstein and Custer. Again, BPI asserts only that Zirnstein and Custer gave one interview apiece, both of which occurred outside of South Dakota. (Complaint, ¶ 126 & Exs. 2 – 12.) BPI does not allege, for example, that Zirnstein or Custer contacted any news media in South Dakota to volunteer statements about BPI or that Zirnstein or Custer contacted any of BPI's customers in South Dakota and urged them to drop BPI's product. *Cf.* (Complaint, ¶ 41 (alleging that ABC, but not Zirnstein or Custer, reached into South Dakota to contact BPI).) Indeed, there were no affirmative contacts at all between Zirnstein or Custer and South Dakota, let alone repetitive and continuous contacts on which an exercise of personal jurisdiction might possibly be based. Before this lawsuit was filed, Zirnstein had never been to South Dakota or even communicated with anyone here by telephone. (Zirnstein Affidavit, ¶ 2.) Custer had previously visited South Dakota only as a tourist and had made phone calls to South Dakota only to reserve a hotel room. (Custer Affidavit, ¶ 3.) The "quantity of contacts" therefore strongly militates against an exercise of personal jurisdiction.

**B.     The Nature And Quality Of Contacts Does Not
        <u>Support Personal Jurisdiction Over Zirnstein & Custer</u>**

The nature and quality of Zirnstein and Custer's contacts with South Dakota do not weigh

in favor of an exercise of personal jurisdiction.  When a defendant/news source did not initiate

the contact with the journalist who published the allegedly defamatory statement, courts have

generally found purposeful availment lacking.  *Ticketmaster*, 26 F.3d at 208-09.  Indeed, "when

the defendant in a defamation action is a journalist's source, the link between the defendant's

conduct and the cause of action is attenuated by the intervening activities of third parties, *e.g.*,

the reporter, the editor, the media outlet, and that those intermediaries shape, amplify, and

occasionally distort the original utterance." *Ticketmaster,* 26 F.3d at 207.  A source does not

research or produce the story and has no role in shaping its final form.  *Wilson*, 20 F.3d at 648.

Nor does a source control the distribution and circulation of the statement.  *Madara,* 916 F.2d at

1519.  Further, republication of the statements – yet another process over which the source has

no control – attenuates the link between the remark and the alleged injury.  *Ticketmaster,* 26 F.3d

at 212.  For these reasons, a source who simply responds to a reporter's questions cannot be said

to have expressly aimed his conduct at the plaintiff's home state.  *Davis,* 963 N.E.2d at 57-58.

These principles have particular force here, where BPI admits the harm complained of

was not due to the original statements, but to the way in which ABC allegedly used them.   (*See*

page 3, *supra*.)  Indeed, when Zirnstein and Custer gave their interviews, they had no control

over how and how often those statements would be re-broadcasted or repeated.  For example,

Zirnstein and Custer did not make the decision to run multiple segments regarding LFTB.  Nor

did Zirnstein or Custer have anything to do with ABC's airing of the so-called "black list."  As

the Second Circuit explained in *Ticketmaster*:

> The original comment, technically a tort in its own right (if defamatory), inflicted no significant injury, except insofar as it led to republication in the ensuing [broadcasts] – and the form and tone of the republication was not by any stretch of the most active imagination within the defendant's effective control.

26 F.3d at 207.  Put simply, since Zirnstein and Custer had no control over the acts that are claimed to have caused the harm, their contacts are not of the nature and quality that would support an exercise of personal jurisdiction.

Moreover, the statements made by Custer and Zirnstein to ABC concerned a <u>product</u> manufactured by BPI and labeled and sold to consumers by others – not a person.  (Zirnstein Affidavit, ¶ 8; Custer Affidavit, ¶ 4.)  Allegedly defamatory statements about a widely-distributed product are less likely to confer jurisdiction than statements about a particular individual.  *Core-Vent Corp. v. Nobel Industries AB,* 11 F.3d 1482, 1486 (9th Cir. 1993) (declining to find jurisdiction over Swedish doctors who had published allegedly libelous articles about the plaintiff's product in international medical journals).  The widespread distribution of finely textured beef products means that any statements about it cannot be seen as commentary on an event in South Dakota, thus differentiating this situation from *Calder*, where the events underlying the story occurred in California and were researched through California sources.  *Id.*

The Eighth Circuit's decision in *Johnson v. Arden*, 614 F.3d 785 (8th Cir. 2010), is instructive and reflects the proper application of the foregoing principles to a defamation case. There, Missouri plaintiffs alleged that defendant defamed them from Colorado by publishing the following statement to an internet chat site:

> Sue Johnson and Cozy Kittens operated from Unionville, Missouri, where they killed cats, sold infected cats and kittens, brutally killed and tortured unwanted cats and operated a "kitten mill" in Unionville, Missouri.

*Id.* at 796.  Despite the specific reference to plaintiffs and their Missouri operations, the Eighth Circuit found the statement insufficient to confer jurisdiction in Missouri over the defendant.  *Id.*

at 796-97.  The statement, reasoned the Court, <u>was</u> aimed at the plaintiffs.  But even though the plaintiffs were Missouri residents, there was no evidence the alleged postings were made for the purpose of having the consequences felt in Missouri or to specifically target Missouri in any way.  *Id.* at 796.  "[A]bsent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction."  *Id.* at 797.  Because the defendant in *Johnson* had no additional contacts with Missouri, she was not subject to personal jurisdiction there.  614 F.3d at 796.  This is consistent with the Supreme Court's recent decision in *J. McIntyre Mach. Ltd.*, where the Court held that merely placing product in the stream of commerce which caused injury in the forum state was insufficient to establish jurisdiction without additional evidence the defendant targeted the forum.  131 S. Ct. at 2788.

 The statements BPI attributes to Zirnstein and Custer bear even less of a connection to South Dakota than the statements at issue in *Johnson* had to Missouri.  Zirnstein and Custer did not mention South Dakota specifically, nor did they even reference BPI by name.  (*See* Complaint, Exs. 2 – 12.)  Rather, their comments focused exclusively on a beef product that BPI manufactures in locations across the country – though BPI does not even allege that it manufactures LFTB in South Dakota.  (*See generally*, Complaint.)  For all of the foregoing reasons, the nature and quality of Zirnstein and Custer's contacts with South Dakota are not sufficient to confer the Court with personal jurisdiction over them.

### C. <u>The Connection Between The Contacts And BPI's Claims Is Weak</u>

 The relationship of the contacts to BPI's claims also is tenuous.  The historical context of the "pink slime" moniker greatly informs this analysis.  As noted above, Zirnstein coined the phrase ten years ago in a private, internal email to Custer, where he also opined that finely textured beef is not fresh ground beef and allowing it to be included in ground beef is a form of

fraudulent labeling.  The New York Times obtained this e-mail and repeated the statements in a 2009 article.  No one would dispute that the New York Times is a widely distributed publication or that millions of people read it.  Yet, the publication of the 2009 article did not prompt BPI to file a lawsuit against anyone.  Thus, Zirnstein and Custer could hardly have foreseen that the mere act of repeating statements that had been in the public sphere for years would suddenly prompt BPI to sue them in South Dakota.  Indeed, as BPI readily admits, it is not the statements themselves with which BPI quarrels, but the manner in which ABC allegedly used them as a springboard for a series of stories about LFTB.  (Roche Affidavit, Ex. 1 (9/13/12 Press Conference ("The only reason we have sued ABC is they made a choice to turn this into this sustained long running repetitive conduct that has decimated the product in the marketplace.").)

Moreover, BPI does not claim the brunt of the harm was suffered in South Dakota.  "A corporation does not suffer harm [from an allegedly libelous statement] in the same sense that an individual does."  *Core-Vent Corp.,* 11 F.3d at 1486.  When the allegedly defamatory comments concern a product that was distributed worldwide and the plaintiff is a corporation, the brunt of the harm may be felt most strongly not in the corporation's place of residence ***but in the state where the comments caused the biggest drop-off in business***.  *Id.* at 1487.  There is and could be no allegation that BPI lost more customers in South Dakota than anywhere else.  Indeed, according to BPI's spokesperson at the 9/13/12 Press Conference, BPI is "encouraged by the actions taken by Iowa, Nebraska and South Dakota to continue to use lean, finely textured beef in their [school lunch] products."  (Roche Aff., Ex. 1.)

### D.   The Convenience Of Parties And The Interest Of The Forum Do Not Favor Jurisdiction

The convenience of the parties and the interest of the forum are the two "second-tier" factors in the five-part test laid down by the Eighth Circuit.  Here, the "convenience" factor

favors Zirnstein and Custer.  It would not be convenient for Zirnstein and Custer to expend their own limited resources and time to travel to South Dakota for depositions, meetings and trial. The same could be said of BPI having to travel to their home states, except to the extent that BPI's financial ability to absorb travel costs would obviously exceed that of individuals like Zirnstein and Custer.

Finally, South Dakota's interest in affording its residents a forum also is not particularly strong here.  None of the three corporate plaintiffs are South Dakota corporations.  (Complaint, ¶¶ 25-27.)  Likewise, though BPI alleges it had to close three of its processing facilities and let 700 employees go, none of its processing facilities are located in South Dakota.  (*See* Complaint, ¶¶ 19 & 368 (facilities located in Texas, Kansas, Iowa and Nebraska).)  BPI also alleges that it lost revenue, (Complaint, ¶¶ 19 & 375), but does not allege actual lost sales in South Dakota. (*Id.*)  Thus, on balance, the two second-tier factors do not favor an exercise of personal jurisdiction.

## CONCLUSION

In light of the foregoing and the arguments submitted by the ABC Defendants for dismissal pursuant to Rule 12(b)(6), Plaintiffs' Complaint should be dismissed with prejudice, and all discovery stayed until all pending dispositive motions are resolved.

Dated at Sioux Falls, South Dakota, this 31st day of October, 2012.

DAVENPORT, EVANS, HURWITZ &
SMITH, L.L.P.

/s/ Vince M. Roche
Edwin E. Evans
Vince M. Roche
Elizabeth S. Hertz
206 West 14th Street
PO Box 1030
Sioux Falls, SD 57101-1030

eevans@dehs.com
vroche@dehs.com
ehertz@dehs.com

Of Counsel (*pro hac vice* motion filed):

William D. Marler, Esq.
Marler Clark LLP PS
1301 Second Avenue, Suite 2800
Seattle, WA  98101-3808
bmarler@marlerclark.com

*Attorneys for Defendants Gerald Zirnstein and
Carl Custer*

## CERTIFICATE OF SERVICE

The undersigned, one of the attorneys for Defendants Gerald Zirnstein and Carl Custer, hereby certifies that a true and correct copy of the foregoing "*Brief in Support of Custer and Zirnstein's Motion to Dismiss*" was served upon the following counsel by filing the same with the Court's CM/ECF system:

Dan K. Webb
J. Erik Connolly
Nicole E. Wrigley
WINSTON & STRAWN, LLP
35 W. Wacker Drive
Chicago, IL  60601
 *dwebb@winston.com*
 *econnolly@winston.com*
 *nwrigley@winston.com*

Daniel L. Hartnett
Sabrina L. LaFleur Sayler
CRARY, HUFF, RINGGENBERG,
HARTNETT & STORM, P.C.
711 Sioux Point Road, Suite 200
Dakota Dunes, SD  57049
 *dhartnett@craryhuff.com*
 *ssayler@craryhuff.com*

Kevin Baine
Williams & Connolly, LLP
725 Twelfth Street N.W.
Washington, DC  20005
 *KBaine@wc.com*

Scott Heidepriem
Ron A. Parsons, Jr.
Shannon Falon
Johnson, Heidepriem & Abdallah, LLP
PO Box 2348
101 South Main Avenue, Suite 100
Sioux Falls, SD  57104
 *scott@jhalawfirm.com*
 *ron@jhalawfirm.com*
 *Shannon@jhalawfirm.com*

Steven W. Sanford
CADWELL, SANFORD, DEIBERT & GARRY
P. O. Box 2498
Sioux Falls, SD  57101
  *ssanford@cadlaw.com*

on this 31st day of October, 2012.


                                        /s/ Vince M. Roche
                                        Vince M. Roche