UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| BEEF PRODUCTS, INC., BPI TECHNOLOGY, INC. and FREEZING MACHINES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN BROADCASTING COMPANIES, INC., ABC NEWS, INC., DIANE SAWYER, JIM AVILA, DAVID KERLEY, GERALD ZIRNSTEIN, CARL CUSTER, and KIT FOSHEE, <br><br> Defendants. | Civ. No. 12-4183 <br><br><br> ORAL ARGUMENT REQUESTED |

**MEMORANDUM IN SUPPORT OF
ABC DEFENDANTS' MOTION TO DISMISS ALL CLAIMS OF
PLAINTIFFS BPI TECHNOLOGY, INC. AND FREEZING MACHINES, INC.
FOR FRAUDULENT JOINDER AND FAILURE TO STATE A CLAIM**

JOHNSON, HEIDEPRIEM &
  ABDALLAH, LLP

Scott N. Heidepriem
Ronald A. Parsons, Jr.
Shannon R. Falon
101 South Main Avenue, Suite 100
Sioux Falls, SD 57104
Tel: (605) 338-4304
Fax: (605) 338-4162

WILLIAMS & CONNOLLY LLP

Kevin T. Baine (*pro hac vice pending*)
Dane H. Butswinkas (*pro hac vice pending*)
Carl R. Metz (*pro hac vice pending*)
725 Twelfth Street NW
Washington, D.C. 20005
Tel:  (202) 434-5000
Fax:  (202) 434-5029

*Attorneys for Defendants American Broadcasting Companies, Inc.,
ABC News, Inc., Diane Sawyer, Jim Avila, and David Kerley*

**TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................................1

BACKGROUND .................................................................................................................5

ARGUMENT ......................................................................................................................8

I.      THE FRAUDULENT JOINDER STANDARD .................................................8

II.     BPI TECHNOLOGY AND FREEZING MACHINES ARE NOT REAL PARTIES
        IN INTEREST TO THE DEFAMATION CLAIMS (COUNTS 1-9, 19-22). ..............10

III.    BPI TECHNOLOGY AND FREEZING MACHINES ARE NOT REAL PARTIES
        IN INTEREST TO THE CLAIM UNDER SOUTH DAKOTA'S AGRICULTURAL
        FOOD PRODUCTS DISPARAGEMENT ACT (COUNT 26)...................................13

IV.     BPI TECHNOLOGY AND FREEZING MACHINES ARE NOT REAL PARTIES
        IN INTEREST TO THE CLAIMS FOR DISPARAGEMENT OF AN
        AGRICULTURAL FOOD PRODUCT UNDER THE COMMON LAW (COUNTS
        10-18, 23-25)......................................................................................................14

        A.      A Common Law Claim for Product Disparagement Can Only Be Asserted
                by the Producer of the Product at Issue.........................................................15

        B.      BPI Technology and Freezing Machines Cannot Assert Broader Rights
                Under the Common Law than Were Provided for by the Legislature........20

V.      BPI TECHNOLOGY AND FREEZING MACHINES ARE NOT REAL PARTIES
        IN INTEREST TO THE CLAIM FOR TORTIOUS INTERFERENCE WITH
        BUSINESS RELATIONS (COUNT 27). .......................................................................23

CONCLUSION ...................................................................................................................26

## TABLE OF AUTHORITIES

### FEDERAL CASES

*AIDS Counseling & Testing Ctrs. v. Group W Television, Inc.*, 903 F.2d 1000
(4th Cir. 1990)......................................................................................................12

*Assoc. Ins. Mgmt. Corp. v. Ark. Gen. Agency, Inc.*, 149 F.3d 794 (8th Cir. 1998).....................9

*Auvil v. CBS 60 Minutes*, 800 F. Supp. 928 (E.D. Wash. 1992) ...............................................16

*Auvil v. CBS 60 Minutes*, 800 F. Supp. 941 (E.D. Wash. 1992) ...............................................16

*Bank of the U.S. v. Deveaux*, 5 Cranch 61 (1809) ....................................................................4

*BASF AG v. Great Am. Assur. Co.*, 522 F.3d 813 (7th Cir. 2008) ...........................................15

*Beverly Hills Foodland, Inc. v. United Food and Comm. Workers Union*, 39 F.3d 191
(8th Cir. 1994)..............................................................................................17, 23

*Block v. Toyota Motor Corp.*, 665 F.3d 944 (8th Cir. 2011) ...............................................1, 9, 26

*Bose Corp. v. Consumers Union of the U.S., Inc.*, 466 U.S. 485 (1984) .....................................16

*Brummett v. Taylor*, 569 F.3d 890 (8th Cir. 2009).....................................................................10

*Bullpen Distribution, Inc. v. Sentinel Ins. Co., Ltd.*, No. C 12–0894 CW, 2012 WL
1980910 (N.D. Cal. Jun. 1, 2012) ..........................................................................16

*Cascades Dev. of Minn., LLC v. Nat'l Specialty Ins.*,
675 F.3d 1095 (8th Cir. 2012) ...........................................................1, 10, 12, 26

*Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806 (8th Cir. 2003) ............................................................9

*Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505 (4th Cir. 1999) ...............................23

*Fowler v. Curtis Pub. Co.*, 78 F. Supp. 303 (D.D.C. 1948).........................................................12

*Gilman v. Spitzer*, No. 11–CV–5843, 2012 WL 4510681 (S.D.N.Y. Oct. 1, 2012) ...................12

*Great Am. Ins. Co. v. Riso, Inc.*, 479 F.3d 158 (1st Cir. 2007).................................................15

*Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99 (1945)..............................................................4

*Heisinger v. CJ Ventures, LLC*, No. CIV 08-4027, 2009 WL 790202 (D.S.D. 2009) ...............10

*Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988) ....................................................23

*Iowa Pub. Serv. Co. v. Med. Bow Coal Co.*, 556 F.2d 400 (8th Cir. 1977)......................... *passim*

*Isuzu Motors, Ltd. v. Consumers Union of U.S.*
   12 F. Supp. 2d 1035 (C.D. Cal. 1998)..................................................................17, 18, 23

*Jankovic v. Int'l Crisis Group*, 494 F.3d 1080 (D.C. Cir. 2007) ...................................11

*Jefferson County School Dist. No. R-1 v. Moody's Investor's Svces, Inc.*, 175 F.3d 848
   (10th Cir. 1999)..................................................................................................23

*Kirch v. Liberty Media Corp.*, 449 F.3d 388 (2d Cir. 2006) ...................................11, 12

*Magallon v. Livingston*, 453 F.3d 268 (5th Cir. 2006) ...............................................10

*McBride v. Crowell-Collier Publ'g Co.*, 196 F.2d 187 (5th Cir. 1952)........................12

*Med. Lab. Mgmt. Consultants v. Am. Broadcasting Cos., Inc.*, 306 F.3d 806 (9th Cir.
   2002) ................................................................................................................23

*Menz v. New Holland N. Am., Inc.*, 440 F.3d 1002 (8th Cir. 2006)............................9

*Microsoft Corp. v. Zurich Am. Ins. Co.*, No. C00-521P, 2001 WL 765871 (W.D. Wash.
   Jul. 2, 2011) ......................................................................................................15

*Navarro Sav. Assoc. v. Lee*, 446 U.S. 458 (1980) .........................................................8

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) ...............................................10

*Redco Corp. v. CBS, Inc.*, 758 F.2d 970 (3d Cir. 1985) ...............................................23

*Rosenblatt v. Baer*, 383 U.S. 75 (1966) .......................................................... 2, 10, 11

*Salem Trust Co. v. Mfrs.' Fin. Co.*, 264 U.S. 182 (1924) .............................................9

*Sanderson v. Indiana Soft Water Svce., Inc.*, No. IP 00-0549, 2004 WL 1784755 (S.D.
   Ind. Jul. 23, 2004) .............................................................................................15

*Simmons Ford v. Consumers Union*, 516 F. Supp. 742 (S.D.N.Y. 1981).................2, 14, 15, 18

*Super. Seafoods, Inc. v. Hanft Fride, P.A.*, No. 11–2459, 2012 WL 2891118 (8th Cir.
   July 16, 2012).....................................................................................................9

*UICI v. Gray*, No. 3:01-CV-0921, 2002 WL 356753 (N.D. Tex. Mar. 1, 2002).......................10

*Unelko Corp. v. Rooney*, 912 F.2d 1049 (9th Cir. 1990) ...........................................................16

## STATE CASES

*Blatty v. New York Times Co.*, 728 P.2d 1177 (Cal. 1986) .........................................................15

*Brodsky v. Journal Pub. Co.*, 42 N.W.2d 855 (S.D. 1950).................................................2, 10, 11

*Burnett v. Myers*, 173 N.W. 730 (S.D. 1919) ............................................................................20

*City of Lemmon v. U. S. Fidelity & Guaranty Co.*, 293 N.W.2d 433 (S.D. 1980)...............21, 22

*City of Sioux Falls v. Ewoldt*, 568 N.W.2d 764 (S.D. 1997) ......................................................14

*Dykstra v. Page Holding Co.*, 766 N.W.2d 491 (S.D. 2009) .................................................24, 25

*Gregory's, Inc. v. Haan*, 545 N.W.2d 488 (S.D. 1996)...............................................................11

*Hagemann ex rel. Estate of Hagemann v. NJS Engg., Inc.*, 632 N.W.2d 840 (S.D. 2001) .........13

*Hohm v. City of Rapid City*, 753 N.W.2d 895 (S.D. 2008) ........................................3, 14, 20, 21

*Landstrom v. Shaver*, 561 N.W.2d 1 (S.D. 1997) ...................................................................3, 25

*Lewis & Clark Rural Water Sys., Inc. v. Seeba*, 709 N.W.2d 824 (S.D. 2006) ..........................21

*McKeon v. Ewert*, 226 N.W. 754 (S.D. 1929) ..........................................................................20

*QSP, Inc. v. Aetna Cas. & Sur. Co.*, 773 A.2d 906 (Conn. 2001) .............................................15

*Rabenberg v. Rigney*, 597 N.W.2d 424 (S.D. 1999) .............................................................13, 14

*Rudolph v. Herman*, 56 N.W. 901 (S.D. 1893) .........................................................................13

*Teilhaber Mfg. Co. v. Unarco Materials Storage*, 791 P.2d 1164 (Colo. Ct. App. 1989) ..........16

## STATUTES AND OTHER AUTHORITIES

28 U.S.C. § 1332 ................................................................................................... *passim*

Ala. Code § 6-5-622 ...................................................................................................21

Ga. Code § 2-16-2 .....................................................................................................21

Idaho Code § 6-2001...................................................................................................21

La. Rev. Stat. § 3:4501.................................................................................................21

Federal Rule of Civil Procedure 12(b)(6) .................................................................5, 10

South Dakota Agricultural Food Products Disparagement Act,
    SDCL 20-10A-1 *et seq.* .................................................................... *passim*

## INTRODUCTION

A plaintiff cannot destroy a federal court's diversity jurisdiction by joining non-diverse plaintiffs lacking enforceable rights of their own. *See Iowa Pub. Serv. Co. v. Med. Bow Coal Co.*, 556 F.2d 400, 404 (8th Cir. 1977); *Cascades Dev. of Minn., LLC v. Nat'l Specialty Ins.*, 675 F.3d 1095, 1098 (8th Cir. 2012). That is what Plaintiff Beef Products, Inc. ("BPI") is attempting to achieve here. All of the claims asserted in the Complaint are based on alleged defamatory and disparaging statements in ABC News reports that refer to BPI alone and to the product that it alone produces, "lean finely textured beef" or "LFTB." Yet BPI has joined two other non-diverse plaintiffs—BPI Technology, Inc. and Freezing Machines, Inc.—that were not referred to in the ABC News reports and that have no claims of their own to assert. Under well-established principles, their citizenship must be disregarded under the doctrine of fraudulent joinder.

A non-diverse party is fraudulently joined when there is "no reasonable basis in fact and law" to sustain its claims, *Block v. Toyota Motor Corp.*, 665 F.3d 944, 950 (8th Cir. 2011), or when it is not a "real party in interest"—that is, when it is not "the person who, under governing substantive law, *is entitled to enforce the right asserted* . . . ." *Iowa Pub. Serv. Co.*, 556 F.2d at 404 (emphasis added). There is no reasonable basis in fact and law for the claims of BPI Technology, Inc. and Freezing Machines, Inc., and they are not real parties in interest. Only Plaintiff BPI meets the test for a real party in interest. The principles that compel these conclusions are fundamental to the law of defamation and product disparagement—and are expressly stated in South Dakota's Agricultural Food Products Disparagement Act ("AFPDA"), SDCL 20-10A-1 *et seq.*

1.      Under both the First Amendment and South Dakota law, the only party entitled to assert a claim for defamation is the party at whom the allegedly false statements are directed. *Rosenblatt v. Baer*, 383 U.S. 75, 81-82 (1966) (First Amendment requires defamatory statement to have been "specifically directed at the plaintiff"); *Brodsky v. Journal Pub. Co.*, 42 N.W.2d 855, 857 (S.D. 1950) ("It must appear that the alleged defamatory language refers to some ascertained or ascertainable person and that person must be the plaintiff").  Known as the "of and concerning" rule, this principle denies relief to any party except the one specifically defamed, even if other related parties claim to have suffered injuries of their own. *See* cases cited *infra* at 10-12. BPI Technology and Freezing Machines do not, and cannot, allege that they were the subjects of the ABC News reports, and as a result they have no enforceable rights that sound in defamation.

2.      Under the AFPDA, the only party entitled to assert a claim for disparagement of an agricultural food product is the "***producer***" of the allegedly disparaged product.  SDCL 20-10A-2 (emphasis added).  BPI Technology and Freezing Machines are not the producers of LFTB, only BPI is. *See* Compl. ¶¶ 25-27.  As a result, they have no enforceable rights arising under the AFPDA.

3.      Under traditional common law product disparagement principles, the only party entitled to assert a claim is the manufacturer or producer of the product about which the allegedly disparaging statement was made. *See Simmons Ford v. Consumers Union*, 516 F. Supp. 742, 751 (S.D.N.Y. 1981); cases cited *infra* at 15-18.  Even if the common law elsewhere permitted disparagement claims by other parties, any such

2

rule would be foreclosed here by the explicit terms of the South Dakota statute that limits claims for disparagement of an agricultural food product to the product's producer. In cases of conflict between a statute and the common law, "the statute controls." *Hohm v. City of Rapid City*, 753 N.W.2d 895, 903 (S.D. 2008) (citing SDCL 1-1-24).

4.     A plaintiff cannot escape the limitations on defamation and product disparagement claims by recasting them as something else, such as a claim for tortious interference with business relations. But even if that were possible, the only party entitled to enforce a claim for tortious interference is the party that claims a business relationship with a third party that has been the subject of interference. *See, e.g., Landstrom v. Shaver*, 561 N.W.2d 1, 16 (S.D. 1997) (requiring an "identifiable third party who wished to deal *with the plaintiff*") (emphasis added). The only party that claims such a relationship with a third party in this case is Plaintiff BPI, which alleges interference with *its* relationships with *its* customers. Again, BPI alone is the real party in interest.

Whether BPI itself can state a claim upon which relief can be granted is the subject of a separate motion that is being filed simultaneously with this motion—and all of the arguments in support of that motion are equally applicable to the claims of the other two plaintiffs, BPI Technology and Freezing Machines. For the reasons stated in this motion, however, the fate of these two plaintiffs—and the propriety of their joinder in the first place—does not depend upon the success of the arguments in the other motion. If any part of the ABC News reports could be deemed actionable as

3

defamation, disparagement or tortious interference, the only party entitled to bring suit is BPI—the only party referred to in the reports, and the only manufacturer of the single product discussed in the reports. BPI Technology and Freezing Machines serve no purpose as plaintiffs other than to support BPI's attempt to avoid the jurisdiction of this Court over its claims. *See* Compl. ¶ 39 (alleging that "[f]ederal diversity jurisdiction does not exist because BPI Tech[nology], [Freezing Machines], ABC and ABC News are all Delaware corporations").

The First Amendment rights implicated by this lawsuit are weighty, but the jurisdictional question is no less so. ABC is a national news organization whose reports are broadcast daily to an audience of millions throughout the United States and around the world. The reports challenged in the lawsuit addressed matters of obvious concern to that audience—what is in the food that people eat and how that food is labeled. While BPI may attempt to assert claims based on allegedly false reports about its product, it cannot under our federal system insist that its claims against out-of-state defendants be heard and tried in the state court of the county that BPI calls home. "The Framers of the Constitution, according to [Chief Justice John] Marshall, entertained 'apprehensions' lest distant suitors be subjected to local bias in State courts, or, at least, viewed with 'indulgence the possible fears and apprehensions' of such suitors." *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 111-12 (1945) (*quoting Bank of the U.S. v. Deveaux*, 5 Cranch 61, 87 (1809) (Marshall, C.J.)). "And so Congress afforded out-of-State litigants another tribunal . . . ." *Id.* This Court is that tribunal, and its doors cannot

4

be barred to the defendants by the fraudulent joinder of two non-diverse plaintiffs who lack enforceable rights of their own.

For these reasons and those that follow, the claims of BPI Technology and Freezing Machines should be dismissed with prejudice under Rule 12(b)(6), and their citizenship disregarded under the doctrine of fraudulent joinder.

## BACKGROUND[1]

In March and April 2012, ABC published a series of reports concerning a product that the "industry calls lean finely textured beef" and others call "pink slime." Compl. Ex. 2 (3/7/12 World News). The ABC News reports described the mechanical process by which LFTB is produced from beef trimmings, explaining that the trimmings are gathered and heated to make it easier to separate fat from muscle, put in a centrifuge and spun, exposed to ammonia gas to "kill bacteria," and then compressed into bricks and flash frozen for shipment. *Id*. The initial broadcast reported the fact that LFTB was included in 70% of the ground beef sold at supermarkets. *See* Compl. Ex. 2 (3/7/12 World News). The report included interviews with two former United States Department of Agriculture Food Safety Inspection Service microbiologists, defendants Gerald Zirnstein and Carl Custer. *Id*. The following night, ABC continued its coverage with an interview of a former BPI Quality Control Manager, defendant Kit Foshee. *See* Compl. Ex. 3 (3/8/12 World News). Subsequent reports covered consumers' reactions

---

[1] The pertinent facts as alleged in the Complaint are set forth in greater detail in the Memorandum in support of the concurrently-filed Motion by the ABC Defendants to dismiss BPI's claims. In the interest of brevity, this Memorandum focuses on the facts specifically related to the two plaintiffs that have been fraudulently joined.

to the reports about LFTB, as well as the response of BPI and other defenders of the product.  *See, e.g.,* Compl. Ex. 4 (3/9/12 World News); Compl. Ex. 6 (3/15/12 World News); Compl. Ex. 10 (3/26/12 World News); Compl. Ex. 11 (3/29/12 World News).

The only entity identified by ABC in its reports was BPI.  *See, e.g.,* Compl. Ex. 2 (3/7/12 World News); Compl. Ex. 3 (3/8/12 World News).  BPI was likewise the only entity identified ***to ABC News*** and ***to the public*** by LFTB defenders.  Before the first ABC News report, a BPI spokesperson responded to inquiries by identifying "Beef Products, Inc." (and no other entities) as the producer of LFTB.  *See* Compl. Ex. 33, Compl. Ex. 36.  Twice BPI's lawyers sent correspondence to ABC complaining of the broadcasts, and in each instance they identified "Beef Products, Inc. ('BPI')" as the only aggrieved party.  *See* Compl. Ex. 58 (3/9/12 letter); Compl. Ex. 62 (3/25/12 letter).  When Eldon Roth, the founder and owner of all three plaintiff corporations responded to the ABC News reports in a published statement, he identified himself solely as: "Beef Products, Inc. Founder Eldon Roth."  *See* Compl. Ex. 71.  And when BPI launched a website to defend its product against criticism, the articles and statements it posted on that website referred only to "Beef Products, Inc." and not any other company.  *See, e.g.,* Compl. Ex. 61 (statement with logo of Beef Products, Inc.).  In fact, ***to this day***, the "About Us" page on that same website refers only to "Beef Products, Inc." (and none of the other plaintiffs), calling it the "the world's leading producer" of LFTB.[2]

---

[2] *See* http://www.beefisbeef.com/about-us/  (visited Oct. 31, 2012).  To the ABC Defendants knowledge, the only references to BPI Technology, Inc. and Freezing Machines, Inc. on that website are contained in press releases announcing the filing of this lawsuit.

ABC's focus on BPI to the exclusion of other companies is consistent with how plaintiffs describe their respective businesses in the Complaint.  BPI is in the business of "producing, distributing and selling lean beef products, including LFTB."  Compl. ¶ 25.  In contrast, BPI Technology, Inc. is a technology and management company that provides various "services" to BPI, including "technological support, sales and marketing services, and administrative services."  *Id.* ¶¶ 26, 376.  Freezing Machines, Inc. is the holder of patents on some of the equipment used by BPI in its manufacturing process.  *Id.* ¶¶ 27, 377.  Both BPI Technology and Freezing Machines assert a financial interest in the sale of LFTB, but that interest is derivative of BPI's.  *Id.* ¶ 376 (alleging that BPI Technology received payments from BPI out of the proceeds of "***BP[I]'s sale*** of LFTB") (emphasis added); *id.* ¶ 377 (same for Freezing Machines).  All three companies are owned and controlled by the same family.  *Id.* ¶¶ 25-27.

The Complaint contains 700 numbered paragraphs, but only a handful that mention BPI Technology or Freezing Machines by name, and none that alleges that ABC defamed them in particular or disparaged any product manufactured by them.  Instead, the allegations relating to these companies serve only to allege that they are non-diverse plaintiffs, *see* Compl. ¶ 39;[3] that they provide services and license certain technology to BPI, for which BPI compensates them out of the proceeds of its LFTB sales, *id.* ¶¶ 26-27

---

[3] Both BPI Technology and Freezing Machines are incorporated in Delaware, the same state as the two corporate defendants.  *Id.* ¶ 39.  None of the defendants are citizens of Nebraska or South Dakota, the states in which BPI was incorporated and has its principal place of business.  *Id.* ¶¶ 25, 30-37.

& 376-78; and that they are "related" to BPI through common ownership and for financial reporting purposes, *id.* ¶ 374.

In an apparent attempt to blur the distinction among the three plaintiffs, the Complaint uses the term "BPI" to refer to all three plaintiffs, *see* Compl. ¶ 29, and asserts claims on behalf of "BPI," without specifying how BPI Technology or Freezing Machines can state any claims of their own.  In this motion, we refer to Beef Products, Inc. alone as "BPI"—because that is how Beef Products, Inc. refers to itself outside the confines of the Complaint,[4] and because distinguishing among the three plaintiffs is required to address the issues presented by this Motion.

## ARGUMENT

All of the claims asserted by all of the plaintiffs are without merit, legally and factually, for the reasons explained in the separate Motion that is concurrently being filed by the ABC Defendants.  But the claims of BPI Technology and Freezing Machines fail at an even more basic level.  Those plaintiffs are not in any sense the real parties in interest to any of the asserted claims.  For that reason, they should not only be dismissed, but disregarded in determining this Court's jurisdiction.

## I.    THE FRAUDULENT JOINDER STANDARD

To establish this Court's jurisdiction based upon complete diversity of citizenship under 28 U.S.C. § 1332, only the real parties in interest to the litigation are considered.  *See Navarro Sav. Assoc. v. Lee*, 446 U.S. 458, 461 (1980) ("[A] federal court

---

[4] *See, e.g.,* Compl. Exs. 46-47 (pages taken from Beef Products, Inc.'s website that repeatedly use the acronym "BPI" to identify that company); *id.* Exs. 58 & 62.

8

must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy"); *Salem Trust Co. v. Mfrs.' Fin. Co.*, 264 U.S. 182, 190 (1924) (same); *Assoc. Ins. Mgmt. Corp. v. Ark. Gen. Agency, Inc.*, 149 F.3d 794, 796 (8th Cir. 1998) ("[C]omplete diversity . . . is tested by the citizenship of the real parties to the controversy"). Thus, where any party—plaintiff or defendant—has been added for the improper purpose of destroying diversity jurisdiction, courts will disregard that party's citizenship under the doctrine of fraudulent joinder, and assess jurisdiction based on the citizenship of the real parties in interest. *See Iowa Pub. Serv. Co.*, 556 F.2d at 404 (discussing standard for fraudulent joinder of plaintiffs); *Block*, 665 F.3d at 950 (same for fraudulent joinder of defendants).

"The common thread underlying the question whether a [party] has been fraudulently joined to defeat diversity jurisdiction is reason." *Menz v. New Holland N. Am., Inc.*, 440 F.3d 1002, 1004 (8th Cir. 2006) (quotation omitted). "Thus, a proper review should give paramount consideration to the reasonableness of the basis underlying the state claim." *Id.* (*quoting Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 10 (8th Cir. 2003)). When there is "no reasonable basis in fact and law" to sustain the claims brought by or against the non-diverse party, then joinder of that party is "fraudulent," because "it was named as a party 'solely to prevent removal' of the case from state court." *Block*, 665 F.3d at 947 (*quoting Filla*, 336 F.3d at 809-10).

The rule for a "nondiverse" plaintiff has been stated as follows: "if the 'nondiverse' plaintiff is not a real party in interest, and is purely a formal or nominal party, his or its presence in the case may be ignored in determining jurisdiction." *Iowa*

*Pub. Serv. Co.*, 556 F.2d at 404; *see also Cascades Dev. of Minn.*, 675 F.3d at 1098 (same). For these purposes, "[t]he 'real party in interest' is **the person who**, under governing substantive law, **is entitled to enforce the right asserted**, and in a diversity case, the governing substantive law is ordinarily state law." *Iowa Pub. Serv. Co.*, 556 F.2d at 404 (emphasis added); *see also Cascades Dev. of Minn.*, 675 F.3d at 1098 (same); *Super. Seafoods, Inc. v. Hanft Fride, P.A.*, No. 11–2459, 2012 WL 2891118, at *6 (8th Cir. July 16, 2012) (unpublished) (same).

It follows that when plaintiffs are not the real parties in interest to a case, they should be dismissed pursuant to Rule 12(b)(6), *see Heisinger v. CJ Ventures, LLC*, No. CIV 08-4027, 2009 WL 790202, at *3 (D.S.D. 2009) (citing *Magallon v. Livingston*, 453 F.3d 268, 271 (5th Cir. 2006)), and their citizenship disregarded in establishing this Court's jurisdiction, *see UICI v. Gray*, No. 3:01-CV-0921, 2002 WL 356753, at *4-6 (N.D. Tex. Mar. 1, 2002) (denying motion to remand where non-diverse plaintiff was not a "real party in interest," and therefore had been fraudulently joined for the purpose of preventing removal to federal court (citing *Iowa Pub. Serv. Co.*, 556 F.2d at 404)).

## II.   BPI TECHNOLOGY AND FREEZING MACHINES ARE NOT REAL PARTIES IN INTEREST TO THE DEFAMATION CLAIMS (COUNTS 1-9, 19-22).

It is axiomatic that a plaintiff asserting a cause of action for defamation must plead and prove that the allegedly false statements are "of and concerning" the plaintiffs and not another party. *Rosenblatt*, 383 U.S. at 81-82 (proof of this element is necessary under the Constitution); *see also New York Times Co. v. Sullivan*, 376 U.S. 254, 288-92 (1964) (same under common law); *Brummett v. Taylor*, 569 F.3d 890, 891-92 (8th

Cir. 2009) (same).  This bedrock requirement exists under South Dakota law as much as under the First Amendment:  "It must appear that the alleged defamatory language refers to some ascertained or ascertainable person *and that person must be the plaintiff*."  *Brodsky*, 42 N.W. 2d at 857 (emphasis added).

BPI Technology and Freezing Machines cannot remotely contend that any of the ABC News reports refers to them in any way, let alone in a way that bears upon and causes injury to their "personal reputation."  *Gregory's, Inc. v. Haan*, 545 N.W.2d 488, 493 n.2 (S.D. 1996).  Not surprisingly, none of the 700 paragraphs in the Complaint identifies a single statement that was directed at BPI Technology or Freezing Machines. These entities are not, for that reason, proper plaintiffs in any defamation claim arising from those broadcasts.  *Rosenblatt*, 383 U.S. at 81-82; *Brodsky*, 42 N.W. 2d at 857.

It is of no moment that BPI Technology and Freezing Machines allege that they are related to BPI through common ownership and the preparation of consolidated financial statements.  *See* Compl. ¶ 374.  Defamation—whether asserted by an individual or a company—inflicts a personal injury, one that is not shared by others "merely on the basis of [their] relationship to the" defamed party.  *Rosenblatt*, 383 U.S. at 82.  Thus, allegations that news reports defame one member of a corporate family do not give rise to actionable claims by other corporations in that same family.  *See, e.g.*, *Jankovic v. Int'l Crisis Group*, 494 F.3d 1080, 1089 (D.C. Cir. 2007) (affirming the dismissal of claims brought by two businesses under common ownership with an allegedly-defamed bank); *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 391, 398 (2d Cir. 2006) (statements directed at the German media conglomerate KirchGroup were not

11

actionable by an American subsidiary "known in the industry as the 'face' of the KirchGroup in North America"); *Gilman v. Spitzer*, No. 11–CV–5843, 2012 WL 4510681, *6 (S.D.N.Y. Oct. 1, 2012) ("Courts have repeatedly held, particularly after *New York Times v. Sullivan*, that defamation is personal.  Statements which refer to an organization do not implicate its members.") (quotation and citations omitted).

Nor is it of any moment that BPI Technology and Freezing Machines claim to have suffered an injury as a result of the allegedly false statements about BPI in the ABC News reports.  *See* Compl. ¶¶ 376-77.  Financial loss does not convert a statement about someone else into a statement "of and concerning" the plaintiff.  *See AIDS Counseling & Testing Ctrs. v. Group W Television, Inc.*, 903 F.2d 1000, 1005 (4th Cir. 1990) ("The mere fact that a publication might injure the investors in a business does not give rise to a claim for defamation in those investors unless the publication appears to refer to the investors individually"); *Kirch*, 449 F.3d at 398  ("[F]alse disparaging statement about IBM, for example, would not, we think, ordinarily be a defamatory statement 'of and concerning' all of IBM's suppliers, employees and dealers, however much they may be injured as a result"); *McBride v. Crowell-Collier Publ'g Co.*, 196 F.2d 187, 189 (5th Cir. 1952) (stockholder has no cause of action for defamation of business in which he was invested).  In short:  "[a] person who is injured by reason of the fact that someone else is libeled, has no right of recovery."  *Fowler v. Curtis Pub. Co.*, 78 F. Supp. 303, 304 (D.D.C. 1948), *aff'd*, 182 F.2d 377 (D.C. Cir. 1950).

Simply put, BPI Technology and Freezing Machines are not the real parties in interest to the defamation claims alleged in the Complaint, because they are not the

parties who are "entitled to enforce the right asserted."  *Iowa Pub. Serv. Co.*, 556 F.2d at 404; *Cascades Dev. of Minn.*, 675 F.3d at 1098.  To the extent the Complaint asserts any enforceable rights sounding in defamation, those rights belong to BPI and no other entity.

## III.  BPI TECHNOLOGY AND FREEZING MACHINES ARE NOT REAL PARTIES IN INTEREST TO THE CLAIM UNDER SOUTH DAKOTA'S AGRICULTURAL FOOD PRODUCTS DISPARAGEMENT ACT (COUNT 26).

BPI Technology and Freezing Machines are not the real parties in interest to the claim under the AFPDA.  The cause of action created by that statute is, on its face, only available to "producer[s] of perishable agricultural food products."  SDCL 20-10A-2; *see also* SDCL 20-10A-3 (providing for liability "to the producer").  Under the explicit language of the statute, entities other than the producer do not have rights to assert.  *See Rabenberg v. Rigney*, 597 N.W.2d 424, 426 (S.D. 1999) ("When a statute's language is clear, certain and unambiguous, our interpretation is confined to declaring its meaning as clearly expressed") (quotation omitted); *Hagemann ex rel. Estate of Hagemann v. NJS Engg., Inc.*, 632 N.W.2d 840, 843 (S.D. 2001) (effect must be given to "the plain, ordinary meaning of the language used by the legislature").

BPI Technology and Freezing Machines are not the producers of LFTB, and they do not claim to be in the Complaint.  BPI alone is "in the business of producing, distributing and selling lean beef products, including LFTB."  Compl. ¶ 25.  In contrast, BPI Technology and Freezing Machines are, respectively, a company that provides various "services" to BPI, *id.* ¶¶ 26, 376, and a company that owns "intellectual property" on some of the equipment used in BPI's factories, *id.* ¶¶ 27, 377.  Neither falls

13

within the plain and ordinary meaning of the word "producer," and as a consequence, neither has any right of action under the AFPDA. *See Rudolph v. Herman*, 56 N.W. 901, 903-04 (S.D. 1893) ("[W]here a statute creates a liability where otherwise none exists, or incurs a common-law liability" the "courts will not extend or enlarge the liability by construction, nor will they go beyond the clearly expressed provision of the act" to "embrace cases not in the language of the statute"); *Rabenberg*, 597 N.W.2d at 426 ("[T]his Court cannot 'add modifying words to the statute or change the terms'") (quoting *City of Sioux Falls v. Ewoldt*, 568 N.W.2d 764, 767 (S.D. 1997)).

Again, BPI Technology and Freezing Machines are not parties entitled to assert or enforce rights under the AFPDA, and are not real parties in interest to that claim.

## IV. BPI TECHNOLOGY AND FREEZING MACHINES ARE NOT REAL PARTIES IN INTEREST TO THE CLAIMS FOR DISPARAGEMENT OF AN AGRICULTURAL FOOD PRODUCT UNDER THE COMMON LAW (COUNTS 10-18, 23-25).

In addition to a statutory claim for product disparagement, the Complaint asserts twelve other causes of action for disparagement of LFTB under the common law. While those claims are meritless for the reasons expressed in the Motion concurrently-filed by the ABC Defendants, what matters here is that neither BPI Technology nor Freezing Machines is a party that can properly assert such common law claims.

First, the traditional common law product disparagement rule is entirely consistent with the AFPDA: the only party entitled to assert a claim is the manufacturer or producer of the product about which the alleged disparaging statement was made. *See, e.g., Simmons Ford*, 516 F. Supp. at 751. Second, even if the common law elsewhere

14

were expanded to permit claims by parties other than the manufacturer or producer, any expansion in this case would be flatly foreclosed by the explicit terms of the AFPDA, which "controls" in the event of a conflict with the common law. *Hohm*, 753 N.W.2d at 903 (citing SDCL 1-1-24).

### A.   A Common Law Claim for Product Disparagement Can Only Be Asserted by the Producer of the Product at Issue.

Under the common law, as under the AFPDA, it is "a well-established principle . . . that the injured party in an action for product disparagement must establish that the disparaging communication was personally directed to **his or her product**." *Microsoft Corp. v. Zurich Am. Ins. Co.*, No. C00-521P, 2001 WL 765871, *6 (W.D. Wash. Jul. 2, 2011) (emphasis added).  That is because the same "First Amendment considerations [that] preclude a plaintiff from recovering based on losses sustained by virtue of the defamation of another," apply equally to product disparagement cases, preventing recovery by "anyone other than the manufacturer." *Simmons Ford*, 516 F. Supp. at 751.

These principles are recognized by courts throughout the country.  *See QSP, Inc. v. Aetna Cas. & Sur. Co.*, 773 A.2d 906, 918 (Conn. 2001) ("The torts of trade libel and commercial disparagement, like defamation, require that the alleged damaging statement be made concerning the plaintiff"); *BASF AG v. Great Am. Assur. Co.*, 522 F.3d 813, 820 (7th Cir. 2008) (under Illinois law "common-law offenses of libel, slander, or [product] disparagement . . . all require that a false statement be made **about the plaintiff**") (emphasis in original); *Great Am. Ins. Co. v. Riso, Inc.*, 479 F.3d 158, 161-62 & n.3 (1st Cir. 2007) (same, citing decisions from multiple states); *Blatty v. New York Times*

*Co.*, 728 P.2d 1177, 1183 (Cal. 1986) (applying the "'of and concerning' or specific reference requirement" to product disparagement claims); *Sanderson v. Indiana Soft Water Svce., Inc.*, No. IP 00-0549, 2004 WL 1784755, *7 (S.D. Ind. Jul. 23, 2004) (for product disparagement claims, just "[a]s under the law of defamation, a statement is not actionable unless it is clear from its content and context that it refers specifically to the plaintiff's products") ; *Auvil v. CBS 60 Minutes*, 800 F. Supp. 928, 933 (E.D. Wash. 1992) ("*Auvil I*") (holding that the "of and concerning" requirement applies to product disparagement claims); *Auvil v. CBS 60 Minutes*, 800 F. Supp. 941, 943-45 (E.D. Wash. 1992) ("*Auvil II*") (dismissing claims arising from statements that were not "of and concerning" the plaintiffs' apples); *Bullpen Distribution, Inc. v. Sentinel Ins. Co., Ltd.*, No. C 12–0894 CW, 2012 WL 1980910, *4 (N.D. Cal. Jun. 1, 2012) ("In order to comply with First Amendment requirements, to make a claim of disparagement at the pleading stage, a plaintiff must allege that the injurious falsehood refers specifically to the derogated person or product").

Even in those courts that have not confronted the issue directly, there is broad recognition that the First Amendment protections afforded in defamation cases apply in full measure to product disparagement cases. *See Bose Corp. v. Consumers Union of the U.S., Inc.*, 466 U.S. 485, 490 (1984) (applying First Amendment principles in product disparagement case); *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1057-58 (9th Cir. 1990) ("[C]laims for product disparagement, or 'trade libel,'. . . are subject to the same First Amendment requirements that govern actions for defamation"); *Teilhaber Mfg. Co. v. Unarco Materials Storage*, 791 P.2d 1164, 1167 (Colo. Ct. App. 1989) ("The constitutional

16

protections afforded a defendant in a defamation action are applicable to a defendant in a product disparagement action").  Indeed, as the Eighth Circuit has held, it is "only logical" that the same First Amendment limitations apply to any tort claim that seeks to impose liability for speech, because "a plaintiff may not avoid the protection afforded by the Constitution . . . merely by the use of creative pleading."  *Beverly Hills Foodland, Inc. v. United Food and Comm. Workers Union*, 39 F.3d 191, 196 (8th Cir. 1994).

Consistent with these principles, courts dismiss product disparagement claims where, as with BPI Technology and Freezing Machines, the allegation is that a plaintiff's injury arises from the disparagement of a product manufactured by someone else.  In *Isuzu Motors, Ltd. v. Consumers Union of U.S.*, 12 F. Supp. 2d 1035 (C.D. Cal. 1998), plaintiffs were three corporations:  the Japanese manufacturer of Isuzu motor vehicles; a Michigan corporation that imported those vehicles for sale in the United States; and a California corporation that sold them at its distributorships.  *Id.* at 1040.  All three were part of the Isuzu corporate family, and all three asserted they had been injured in their business when *Consumer Reports* published a series of articles reporting that the Isuzu "Trooper" was unsafe and prone to rolling over at a higher rate than other vehicles.  *Id.* at 1040-42.  Plaintiffs alleged these statements constituted common law product disparagement, and each sought to recover for its resulting losses.  *Id.*

On defendants' motion to dismiss, the district court applied the constitutional and common law "of and concerning" requirement to find that only the manufacturer-plaintiff could seek redress for the disparagement of its product:

17

> The allegedly defamatory and disparaging statements underlying plaintiffs' claims are only "of and concerning" the Trooper and, arguably, the manufacturer of the Trooper, Isuzu Motors Ltd., a Japanese Corporation. Looking at the statements in context, and considering the totality of the circumstances, the statements at issue all involve [*Consumer Report*]'s allegations that the Trooper is dangerous because of the way it was manufactured.   None of defendant's statements are about the Distributor or the Importer.

*Id.* at 1044-45 (dismissing claims with prejudice).

Similarly, in *Simmons Ford*, plaintiffs were, respectively, the manufacturer and retailer of "the 'CitiCar,' one of the two electrically powered automobiles generally available in the United States in 1975." 516 F. Supp. at 743.  Both companies claimed injury resulting from an article in *Consumer Reports* that "detailed at length a variety of safety problems plaguing the CitiCar and [its competitor], notably their flimsy construction and low maximum speed, both of which rendered the cars, in the opinion of the article's writers, unsafe for use on public highways . . . ." *Id.* at 744.  Defendants admitted the report was inaccurate in several respects, *id.* at 745-46, but the district court held that the retailer of the CitiCar could not maintain a disparagement claim, because the false statements related to the car's design and were therefore not "of and concerning" the retailer: "[T]here was no reference to [the retailer] directly or indirectly in the article and the only losses sustained by it were the lost sales of a retailer." *Id.* at 751.

If anything, the claims of BPI Technology and Freezing Machines are substantially more attenuated than the claims of the retailers in *Isuzu Motors* and *Simmon Ford.*  In those cases, the retailers themselves lost sales; in this case, the only lost

18

sales were those of BPI.  *See* Compl. ¶ 25 (BPI is "primarily responsible for preparing and selling LFTB"); *id.* ¶¶ 376-77 (alleging injuries from a decline in "BP[I]'s sale of LFTB").  BPI Technology and Freezing Machines seek to recover not only for the disparagement of a product made by someone else, but for alleged damages stemming from lost sales sustained by someone else.  If parties in their positions were permitted to assert claims for product disparagement, vicarious liability for product disparagement would be potentially limitless.  Just as BPI Technology and Freezing Machines claim to have suffered financial injury as a result of reduced sales of LFTB, so too could countless others—engineers, plant workers, truck drivers, wholesale distributors, retailers, fast food chains, and even the slaughterhouses that sell their leftover trimmings to BPI.  A similar set of "injured" parties would exist in every case because products are inevitably designed, packaged, transported and sold by a large number of people and companies.

It would have a substantial chilling effect on speech, and in particular the kind of consumer reporting that took place here, if the consequences of criticizing a product were that every person or entity in the chain of commerce had a cause of action for damages resulting from reduced sales of that product.  And if relief is not to be provided to all such parties, how could courts pick and choose among them—permitting, for example, a claim by a company that licensed "intellectual property" to a manufacturer for a fee, but denying it to employees paid wages to manufacture the product?  The only principled limitation is the one the common law and First Amendment have traditionally imposed, and that the South Dakota Legislature

19

mandated when it enacted a statutory version of this tort:  the producer of an agricultural food product has a claim to recover for injuries resulting from the disparagement of its product—and no one else.

For these reasons, BPI Technology and Freezing Machines are no more real parties in interest to a common law claim for disparagement of an agricultural food product, assuming such an action were recognized in South Dakota, than they are to the authorized statutory claim.

### B. BPI Technology and Freezing Machines Cannot Assert Broader Rights Under the Common Law than Were Provided for by the Legislature.

Even if the common law rule generally were not clear, the law of South Dakota is explicit—as a matter of statute, only "the producer" can assert a claim for disparagement of an agricultural food product.  SDCL 20-10A-2.  And South Dakota law could not be more clear on the interplay between the common law and statutes enacted by the Legislature:  "the rules of the common law . . . are in force, except where they conflict with the will of the sovereign power" including as expressed in "statutes enacted by the Legislature."  *Hohm*, 753 N.W.2d at 903 (quoting SDCL 1-1-24).  Thus, in cases of a conflict, "the statute controls."  *Id.*; *see also Burnett v. Myers*, 173 N.W. 730, 731 (S.D. 1919) (same); *McKeon v. Ewert*, 226 N.W. 754, 755 (S.D. 1929) (same). [5]

---

[5]  Indeed, for the reasons stated in the ABC Defendants' concurrently filed Motion to dismiss BPI's claims, the remedy provided by the AFPDA is exclusive and preempts any common law claims governing the subject matter of disparagement of agricultural food products.

Here there is no actual conflict between the limitations contained in the AFPDA and the common law—both provide relief only to the producer of the allegedly-disparaged product.  If that were somehow not the case—if at common law entities like BPI Technology and Freezing Machines could obtain relief for the disparagement of an agricultural food product they did not manufacture or produce—then there would be a clear conflict between the statute and the common law, and the inconsistent common law rule would be nullified.

As set forth above, the South Dakota Legislature chose expressly to define the class of persons entitled to sue for the "disparagement" of an agricultural food product, and it elected—unlike some other states[6]—to limit that group to producers.  *See* SDCL 20-10A-2.  That legislative decision "controls."  *Hohm*, 753 N.W.2d at 903; *see Lewis & Clark Rural Water Sys., Inc. v. Seeba*, 709 N.W.2d 824, 830 (S.D. 2006) ("The intent of a statute is determined from what the Legislature said rather than what the courts think it should have said").  In fact, there could be no more blatant circumvention of the Legislature's authority than to permit two plaintiffs who are not the producers of LFTB to sue for the alleged disparagement of that product.

A similar circumvention was attempted and rejected in *City of Lemmon v. U.S. Fidelity & Guaranty Co.*, 293 N.W.2d 433 (S.D. 1980), where one of the plaintiffs was a

---

[6] Even the more expansive versions of other states' statutes, however, do not sweep broadly enough to include BPI Technology and Freezing Machines. *See* Ala. Code § 6-5-622 (providing a cause of action for anyone who "produces, markets, or sells" perishable food products and commodities); Ga. Code § 2-16-2 (same for "[p]roducers, processors, marketers, and sellers"); *but see* La. Rev. Stat. § 3:4501 (limiting action to "producers"); Idaho Code § 6-2001 (same).

21

surety that had been held responsible when its principal, a general contractor, failed to complete construction on a municipal swimming pool. *Id.* at 434-35. A South Dakota statute authorized the surety to attempt recoupment of those losses by suing the principal, and the surety availed itself of that right. *Id.* at 438. But the surety also sought broader relief by bringing suit against several sub-contractors, even though the statute provided that the cause of action it created could not be asserted against parties other than the principal. *Id.* The surety argued that although the statute conferred no such cause of action, it could sue under extant common law rules allowing a surety to sue parties other than the principal for negligence. *Id.* at 438-39.

In rejecting the surety's argument, the South Dakota Supreme Court held that were it to allow such a suit, it "would be rendering [the statute] a ***complete nullity***." *Id.* at 439 (emphasis added). Because the "statute prohibits a suit by a surety against those other than the principal," it "speaks directly and unequivocally" to the surety's attempt to bring such a claim under the common law. *Id.*

Here too, the Legislature spoke "directly and unequivocally" when it provided that the "producer" alone "has a cause of action" for the "disparagement of [a] perishable agricultural food product." SDCL 20-10A-2. To recognize the standing of a broader class of plaintiffs under the common law would be an act of nullification.

For all of these reasons, BPI Technology and Freezing Machines are not the real parties in interest to any claim for common law disparagement of an agricultural food product, even if such a claim were viable in South Dakota.

22

## V.  BPI TECHNOLOGY AND FREEZING MACHINES ARE NOT REAL PARTIES IN INTEREST TO THE CLAIM FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS (COUNT 27).

BPI Technology and Freezing Machines are not the real parties in interest to the claim for tortious interference for at least two reasons:

*First*, the law is clear that a party cannot use the artifice of a claim for tortious interference with business relations to circumvent the constitutional and statutory limitations imposed on its defamation and disparagement claims.  *See Isuzu Motors Ltd.*, 12 F. Supp. 2d at 1045 ("First Amendment limitations are applicable to all claims, of whatever label, whose gravamen is the alleged injurious falsehood of a statement"); *see also Beverly Hills Foodland*, 39 F.3d at 196 (applying defamation standards to tortious interference claim, because "a plaintiff may not avoid the protection afforded by the Constitution and federal labor law merely by the use of creative pleading"); *Redco Corp. v. CBS, Inc.*, 758 F.2d 970, 973 (3d Cir. 1985) (unless defendants "can be found liable for defamation, the intentional interference with contractual relations count is not actionable").[7]

As explained above, one of the fundamental limitations on a claim for defamation and product disparagement under the Constitution and South Dakota law

---

[7] *See also Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 522 (4th Cir. 1999) (plaintiffs cannot "void the First Amendment limitations on defamation claims by seeking publication damages under non-reputational tort claims"); *Jefferson County School Dist. No. R-1 v. Moody's Investor's Svces, Inc.*, 175 F.3d 848, 857 (10th Cir. 1999) (same); *Med. Lab. Mgmt. Consultants v. Am. Broadcasting Cos., Inc.*, 306 F.3d 806, 821 (9th Cir. 2002) (same); *see also Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988) (applying First Amendment standards to a claim asserting "the tort of intentional infliction of emotional distress by reason of publications").

23

is that the challenged statements be "of and concerning" the plaintiff or *its* products. And a plaintiff cannot circumvent that limitation, any more than it can avoid the other limitations on its defamation and disparagement claims, by recasting those claims as claims for tortious interference. *See Isuzu Motors Ltd.*, 12 F. Supp. 2d at 1045 (dismissing claims for "intentional interference with prospective business advantage based on alleged injurious falsehoods, because the alleged falsehoods were not of and concerning either plaintiff").

For this reason alone, BPI Technology and Freezing Machines are not the "real party in interest" to any claim for tortious interference, even if such a claim could be asserted by anyone in this case.

*Second*, even setting these considerations aside, BPI Technology and Freezing Machines cannot state a claim for tortious interference with business relations, because they do not allege that they, as opposed to BPI, had any business relationship that was the subject of interference.   The elements of a claim for tortious interference are well-settled:

> The plaintiff in a claim for tortious interference with a valid business relationship or expectancy must prove the following essential elements:  1) the existence of a valid business relationship or expectancy; 2) knowledge by the interferer of the relationship or expectancy; 3) an intentional and unjustified act of interference on the part of the interferer; 4) proof that the interference caused the harm sustained; and, 5) damage to the party whose relationship or expectancy was disrupted.

*Dykstra v. Page Holding Co.*, 766 N.W.2d 491, 499 (S.D. 2009).

BPI Technology and Freezing Machines do not meet these standards because they do not, and cannot, allege that any of *their own* business relationships were interfered with. The business relationships alleged to exist for these two plaintiffs are between themselves and BPI, *see* Compl. ¶¶ 26-27, 376-77, and there is no allegation that those relationships were interfered with—or even that they could have been interfered with given that they are between entities under common ownership. While the Complaint does allege that BPI had relationships with "grocery store chains and ground beef processors" that were impaired, *id.* ¶¶ 693-94, that only gives rise to a potential cause of action by BPI, the "party whose relationship or expectancy was [allegedly] disrupted." *Dykstra*, 766 N.W.2d at 499; *see also Landstrom*, 561 N.W.2d at 16 (requiring "an identifiable third party who wished to deal *with the plaintiff*") (emphasis added).

The allegation that BPI Technology assisted Plaintiff BPI in forming its customer relationships, *see* Compl. ¶ 378, does not suffice. Regardless of any role that personnel employed by BPI Technology had in meeting with customers or negotiating the terms of sale, the relationships that were formed were for the sale of LFTB by its manufacturer BPI, not BPI Technology. *Id.* ¶ 376 (alleging that BPI Technology benefitted from "*BP[I]'s sale* of LFTB").

Finally, even if BPI Technology and Freezing Machines had valid business relationships of their own that were interfered with due to the ABC News reports, they could not allege that the ABC Defendants actually knew of such relationships before the broadcasts. For this independent reason, they cannot state a claim. *Dykstra,* 766 N.W. 2d at 499.

25

In short, even if the Complaint fairly stated a cause of action for tortious interference with business relationships, BPI is the only real party in interest to that claim.

## CONCLUSION

For all of these reasons, BPI Technology and Freezing Machines are not real parties in interest to this litigation—they are not the parties "who, under governing substantive law, [are] entitled to enforce the right[s] asserted." *Iowa Pub. Serv. Co.*, 556 F.2d at 404; *Cascades Dev. of Minn.*, 675 F.3d at 1098. For the same reasons, there is no "reasonable basis in fact and law" for their claims. *Block*, 665 F.3d at 950. Their claims should, therefore, be dismissed with prejudice, and their status as Delaware corporations should be disregarded under the doctrine of fraudulent joinder.

Oral argument on this Motion is requested.

Respectfully submitted,

Kevin T. Baine (*pro hac vice pending*)
Dane H. Butswinkas (*pro hac vice pending*)
Carl R. Metz (*pro hac vice pending*)

WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, D.C. 20005
Tel:  (202) 434-5000
Fax:  (202) 434-5029
kbaine@wc.com
dbutswinkas@wc.com
cmetz@wc.com


JOHNSON, HEIDEPRIEM &
   ABDALLAH, LLP

26

/s/ Ronald A. Parsons, Jr.
Scott N. Heidepriem
Ronald A. Parsons, Jr.
Shannon R. Falon
101 South Main Avenue
Suite 100
Sioux Falls, SD 57104
Tel: (605) 338-4304
Fax: (605) 338-4162
scott@jhalawfirm.com
ron@jhalawfirm.com
shannon@jhalawfirm.com


*Attorneys for American Broadcasting Companies,
Inc., ABC News, Inc., Diane Sawyer, Jim Avila, and
David Kerley*

Dated:  October 31, 2012

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B)

The undersigned hereby certifies that, in accordance with Local Rule 7.1(B), this memorandum contains 7,347 words, inclusive of all footnotes and headings, and exclusive of the cover, table of contents, table of authorities, and counsels' names and addresses.

*/s/ Ronald A. Parsons, Jr.*
Ronald A. Parsons, Jr.

## <u>CERTIFICATE OF SERVICE</u>

On October 31, 2012, the foregoing MEMORANDUM IN SUPPORT OF ABC DEFENDANTS' MOTION TO DISMISS ALL CLAIMS OF PLAINTIFFS BPI TECHNOLOGY, INC. AND FREEZING MACHINES, INC., was filed electronically. Copies of the foregoing document will be served on all counsel of record by operation of the Court's CM/ECF filing system.


/s/ Ronald A. Parsons Jr.
Ronald A. Parsons, Jr.