IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH DAKOTA, SOUTHERN DIVISION

| | | |
|---|---|---|
| Beef Products, Inc., BPI Technology, Inc. and Freezing Machines, Inc., | ) ) ) | Civ. No. 12-4183 |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| American Broadcasting Companies, Inc., ABC News, Inc., Diane Sawyer, Jim Avila, David Kerley, Gerald Zirnstein, Carl Custer and Kit Foshee, | ) ) ) ) ) ) | Judge Lawrence L. Piersol |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT KIT FOSHEE'S
MOTION TO DISMISS THE COMPLAINT**

Daniel Twetten*
Elizabeth Wang*
LOEVY & LOEVY
312 N. May St., Suite 100
Chicago, IL 60607
(312) 243-5900
*Pro hac vice motions pending

Steven W. Sanford
Alex Hagen
CADWELL SANFORD DEIBERT
& GARRY LLP
200 W. 10th St., Suite 200
Sioux Falls, SD 57101
(605) 336-6036

## INTRODUCTION

In March and April 2012, ABC aired a series of news reports on "lean finely textured beef" (LFTB) and Beef Products, Inc. (BPI)'s process for manufacturing LFTB, which is used as a component of ground beef. One of these reports contained a brief interview with Kit Foshee, a former quality assurance manager at BPI, in which he expressed opinions about the appearance and desirability of LFTB. Mr. Foshee was a former insider at BPI who has, over the years, spoken out against false claims that BPI has made about its product. He was terminated from BPI as a result of his disagreement with its practices and his attempt to bring these practices to light. Now BPI is attempting to intimidate Mr. Foshee, five news media defendants, and two former USDA employees into silence with a massive $1.2 billion lawsuit alleging a total of 27 counts. BPI named Mr. Foshee as a defendant on the basis of a few isolated statements from one interview that it alleges are defamatory and disparaging.

The Complaint must be dismissed because Plaintiffs' voluminous complaint and exhibits demonstrate as a matter of law that Mr. Foshee's few statements are not actionable. Mr. Foshee's alleged statements cannot bear the meanings ascribed to them, are undisputedly substantially true, or are non-actionable opinion. These issues are questions of law that this Court can and should resolve on a motion to dismiss under Rule 12(b)(6). *Lundell Mfg Co., Inc. v. American Broadcasting Cos., Inc.*, 98 F.3d 351, 358 (8th Cir. 1996) (where the underlying facts as to the gist or sting of the defamatory charge are undisputed, the court may determine substantial

1

truth as a matter of law); *see also Action Repair, Inc. v. American Broadcasting Cos., Inc.*, 776 F.2d 143, 146 (7th Cir. 1985) (true statements are not defamatory and may be dismissed summarily under Rule 12(b)(6)); *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 624 (D.C. Cir. 2001) ("Verifiability is … a critical threshold question at the 12(b)(6) stage.").

Defamation laws have a chilling effect on speech, *Lundell*, 98 F.3d at 355, and "even a non-meritorious defamation action may stifle open and robust debate on issues of public importance," *Myers v. Plan Takoma, Inc.*, 472 A.2d 44, 50 (D.C. Cir. 1983). There can be no doubt that the desirability or quality of food sold for public consumption is an issue of great public importance. Thus, "[t]he early sifting of groundless allegations from meritorious claims made possible by a Rule 12(b)(6) motion is an altogether appropriate and necessary judicial function," *id.*, especially considered in light of our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *New York Times v. Sullivan*, 376 U.S. 254, 270 (1964).

## FACTS

On March 7, 2012, ABC World News reported that a majority of the ground beef sold to consumers at grocery stores contain "lean finely textured beef" (LFTB). *See* Compl. Ex. 2 at 1. In this report, ABC interviewed Defendants Carl Custer and Gerald Zirnstein, two former USDA scientists. *Id.* at 1-3. ABC reported on the process by which LFTB was made, which starts with "beef trimmings" that are "heated at low temperature," centrifuged to separate fat from muscle, treated "with

2

ammonia gas to kill bacteria," "flash frozen," and shipped to meatpackers and grocery stores where it is added to ground beef. *Id.* at 1-2. Notably, ABC's description of the manufacturing process is little different from the description provided by BPI itself. BPI describes the process of making LFTB as beginning with "beef trimmings," which are placed into a "de-sinewer," "tempered back to about 105 degrees," "put through two different centrifuges" to "separate the lean meat from the fat on the beef trimmings," exposed to "ammonia gas," flash-frozen, and sold "to processors who make ground beef." Compl. ¶¶ 54-59, 61.

The next day, ABC broadcast a report on LFTB that contained an interview with Defendant Kit Foshee. Compl. Ex. 3. In describing LFTB, Mr. Foshee stated, "[i]t looks kind of like Play-Dough or just something that's pink and frozen. It's not—it's not what the typical lay person would consider meat." *Id.* Reporter Jim Avila summarized the process by which LFTB is made, explaining that the USDA says "it's safe to eat." *Id.* at 2. Mr. Avila stated that LFTB was "[m]ore like gelatin and not as nutritious as ground beef," and that "Kit Foshee … says that's because the protein comes mostly from connective tissue, not muscle meat." *Id.* Mr. Foshee then opines, "[i]t will fill you up, but it's not going to do you any good." *Id.* Mr. Foshee's statements re-appeared in online versions of the ABC report. Compl. Ex. 14 (ABC Online Report dated 3/8/12), Ex. 16 (ABC Online Report dated 3/14/12).

ABC continued reporting on LFTB in the weeks that followed, but Mr. Foshee was not interviewed again and none of the other broadcasts referred to or quoted Mr. Foshee again. *See* Compl. Ex. 3. Despite Plaintiffs' baseless assertion that Mr.

3

Foshee "has pursued a personal vendetta against BPI since he was fired in 2001," Compl. ¶ 164, the sum total of the allegedly defamatory and disparaging statements attributed to Mr. Foshee are quoted in the above paragraph. Plaintiffs have spun these few statements from a single interview into 13 separate (and duplicative) counts of defamation and common law and statutory product disparagement against him. *See id.* Counts 2, 8, 9, 11, 17, 18, 19, 20, 21, 23, 24, 25, and 26.[1]

As evidenced by BPI's own exhibits, LFTB and its manufacturing process had been topics of public discussion long before the challenged statements were aired this year. *See* Compl. Ex. 35 (Food Safety News article dated 1/9/12), Ex. 38 (*Washington Post* article dated 6/12/08), Ex. 41 (Nunes article on www.meatpoultry.com dated 1/5/12), Ex. 43 (AgWeb.com article dated 7/28/11), Ex. 44 (MeatMythCrushers.com article dated 10/5/11), Ex. 45 (Meat Myth Crushers YouTube video dated 10/5/11), Ex. 49 (BPI Ammonia video dated 11/7/11), Ex. 55 (NMA press release dated 12/31/09 responding to *New York Times* article on LFTB). For instance, other organizations (in contrast to ABC) had raised questions about the safety of BPI's production process and the use of ammonia gas to make LFTB. *See* Compl. Ex. 55. Thus, ABC's reports were not the first to inform the public about LFTB and how it is viewed by both critics and supporters.

---

[1] The Plaintiffs are BPI, BPI Technology, Inc., and Freezing Machines, Inc, all of which are owned by the Roth family. Compl. ¶¶ 25-27. Only BPI manufactures LFTB, and for the reasons discussed in the ABC Defendants' Motion to Dismiss BPI Technology and Freezing Machines, BPI is the only proper Plaintiff.

4

## STANDARD OF REVIEW

In order to survive a motion to dismiss, factual allegations in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Although the Federal Rules require only notice pleading, "a plaintiff can plead himself out of court by unnecessarily alleging facts which … demonstrate that he has no legal claim." *Trevino v. Union Pacific R. Co.*, 916 F.2d 1230, 1234 (7th Cir. 1990); *see also Early v. Bankers Life and Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992) (same). Exhibits attached to a complaint may be considered in ruling on a motion to dismiss. Fed. R. Civ. P. 10(c); *see McDonald v. Nelnet, Inc.*, 477 F. Supp. 2d 1010, 1012 (E.D. Mo. Feb. 23, 2007); *Deerbrook Pavilion, LLC v. Shalala*, 235 F.3d 1100, 1102 (8th Cir. 2000). A plaintiff who "expound[s] the facts" in his complaint "is bound by such exposition." *Romine v. Acxiom Corp.*, 296 F.3d 701, 706 (8th Cir. 2002); *see also Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005) ("[A] plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to relief.").

# ARGUMENT

I.     Plaintiffs Fail To State Claims For Product Disparagement Or Defamation

    A.     Plaintiffs Fail To State Claims Under The AFPDA Because Defendant Foshee Did Not State Or Imply That LFTB Is Unsafe

Count 26 of the Complaint should be dismissed because the South Dakota Agricultural Food Products Disparagement Act ("AFPDA") applies only to knowingly false statements or implications that an agricultural food product is "not safe for consumption" by the public, *see* SDCL § 20-10A-1(2),[2] and Mr. Foshee is not alleged to have made any statements implying that LFTB is not safe for consumption. Plaintiffs allege that Mr. Foshee's "statements implied that LFTB was an unsafe product being included in ground beef." Compl. ¶ 682. The only statement at issue is Mr. Foshee's alleged statement in an ABC online report that [LFTB] "will fill you up, but it's not going to do you any good." *Id.* ¶¶ 584(a), 647(a), 682 (referring back to statements in Counts 20 & 24); Compl. Ex. 14 at 2.

Immediately before Mr. Foshee's statement appears, the ABC report stated that "because of BPI's treatment of the trimmings … the United States Department of Agriculture says it's safe to eat."[3] Compl. Ex. 14 at 2. Taken as a whole and in

---

[2] *See* Section I of the ABC News Defendants' Motion to Dismiss BPI's Claims. Mr. Foshee incorporates by reference the arguments and authorities in Sections I, II.A, II.B.1.c, II.B.1.d, II.B.1.e, II.B.2.a, II.B.2.b, II.B.2.c, and III.A of the ABC News Defendants' Motion to Dismiss BPI's Claims. Mr. Foshee also incorporates by reference the arguments and authorities cited in the ABC News Defendants' Motion to Dismiss BPI Technology and Freezing Machines, Inc.

[3] The March 8 report with these statements is consistent with all of ABC News' reports. The reports again and again said that LFTB was "safe" and "safe to eat." *See* Compl. Exs. 3, 5, 6, 7, 9, 10, 11, 15, 16, 22.

context, Mr. Foshee's statement does not imply that LFTB is "not safe for consumption." *Cf. Toney v. WCCO Television, Midwest Cable and Satellite, Inc.*, 85 F.3d 383, 396 (8th Cir. 1996) ("A basic rule of defamation law is that courts must construe a statement in light of its context and surrounding circumstances."); *Masson v. New Yorker Magazine*, 501 U.S. 496, 516-17 (1991). Even taken alone, Mr. Foshee's alleged statement does not imply that LFTB is "not safe for consumption." In fact, the statement that LFTB "will fill you up" implies that it is edible and safe to eat.

At most, Mr. Foshee's statement is a comment reflecting an opinion on the relative nutritional value of LFTB, not its safety. Thus, Count 26 should be dismissed as a matter of law because Mr. Foshee's statement cannot bear the meaning attributed to it by Plaintiffs. *See* Restatement (Second) of Torts § 614; *see also Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 820 (8th Cir. 2010) (whether statement is reasonably capable of defamatory meaning is a question of law); *Landers v. Nat'l R.R. Passenger Corp.*, 345 F.3d 669, 672 (8th Cir. 2003) (same).

### B. The AFPDA Is The Exclusive Basis For Liability For Disparagement Of Agricultural Food Products

Unable to state claims against Mr. Foshee under the AFPDA, Plaintiffs attempt to state claims common law claims for product disparagement (*see* Counts 11, 17, 18, 23, 24, and 25). For the reasons discussed in the ABC Defendants' motion to dismiss, these claims must be dismissed because the AFPDA has displaced the common law on claims alleging the disparagement of an agricultural food product

such as LFTB.[4] Mr. Foshee incorporates the arguments and authorities cited by the ABC Defendants by reference herein.

### C. Plaintiffs Fail To State Claims For Common Law Product Disparagement, Even If Those Claims Were Not Preempted By The AFPDA

Even if Plaintiffs' claims for common law product disparagement were not preempted by the AFPDA, they fail as a matter of law. First Amendment defenses apply in product disparagement claims. *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1057-58 (9th Cir. 1990) ("[C]laims for product disparagement, or 'trade libel,' … are subject to the same First Amendment requirements that govern actions for defamation."); *see Bose Corp. v. Consumers Union of the United States, Inc.*, 466 U.S. 485, 490 (1984) (assuming without deciding that First Amendment protections applied to a product disparagement claim). Mr. Foshee's alleged statements are substantially true, are non-actionable opinion, do not bear the meanings attributed to them, or all of the above.

#### 1. Defendant Foshee Did Not State or Imply that LFTB "Is Not Beef or Meat"

In Counts 11 and 23, Plaintiffs allege that Mr. Foshee falsely stated or implied that LFTB is not beef or meat. Specifically, Plaintiffs allege that Mr. Foshee stated that LFTB is "not what the typical person would consider meat," Compl. ¶¶ 489(c), 490(e), (g), 628, and that Jim Avila said that Mr. Foshee told ABC that LFTB comes from a low grade of beef trimmings unlike what they call real ground

---

[4] *See* Section II.A of the ABC News Defendants' Motion to Dismiss BPI's Claims.

8

beef, *id.* ¶ 490(f). Plaintiffs allege that "[t]hese statements were false because LFTB is beef and it is meat." *Id.* ¶ 492.

Plaintiffs have failed to state claims because Mr. Foshee never said that LFTB is not beef or that it is not meat. He said that LFTB "looks kind of like Play-Dough or just something that's pink and frozen. It's not—it's not what the typical lay person would consider meat." Compl. Ex. 3 (ABC World News broadcast 3/8/12). This statement is a matter of opinion not capable of being proved false. "While statements in the form of opinions or questions do not enjoy absolute protection as such, to be actionable such statements must be 'reasonably read as an *assertion* of a false *fact*.'" *Beverly Hills Foodland, Inc. v. United Food and Commercial Workers Union Local 655*, 39 F.3d 191, 195 (8th Cir. 1994) (citations omitted); *see also Janklow v. Newsweek, Inc.*, 788 F.2d 1300, 1303 (8th Cir. 1986) ("If a statement cannot plausibly be verified, it cannot be seen as 'fact.'"); *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 23 (1990) ("[O]nly defamatory statements that are capable of being proved false are subject to liability under state libel law."). Because Mr. Foshee's comment is "a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation," it "will receive full constitutional protection" and is not actionable. *Milkovich*, 497 U.S. at 20.

Moreover, this statement is substantially and indisputably true. *See Masson*, 501 U.S. at 517. "Put another way, the statement is not considered false unless it 'would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" *Id.* The truth, as pleaded by Plaintiffs, is that LFTB

9

"starts with beef trimmings," which are put into a "de-sinewer," are then "tempered back to about 105 degrees," "put through two different centrifuges," exposed to "ammonia gas," and then flash-frozen. Compl. ¶¶ 54-59. There can be no dispute that beef that has been subjected to this elaborate process "is not what the typical lay person would consider meat," and Plaintiffs do not allege otherwise.

As for Plaintiffs' claim of product disparagement based on Mr. Foshee's statement to Jim Avila that LFTB comes from a low grade of beef trimmings unlike what they call real ground beef, *id.* ¶ 490(f), this claim also fails as a matter of law. Stating that "LFTB comes from a low grade of beef trimmings unlike what they call real ground beef" is not a statement that LFTB is not beef or meat. As BPI admits, LFTB is not a product that is sold directly to the public. Instead, LFTB is sold to beef packing companies, which use LFTB as raw material in the construction of ground beef patties. *See* Compl. Ex. 88 ("LFTB is not consumed by itself, but rather is a component of some ground beef."); *id.* ¶¶ 61, 64 ("BPI sells LFTB to processors who make ground beef. … Processors use prime cuts of beef, beef trimmings and LFTB in different combinations to make ground beef. … using LFTB to make ground beef increases the lean percentage of the ground beef."). In other words, nobody eats LFTB on its own and BPI does not market it as a product to be directly consumed.

Moreover, as the ABC Defendants argue, it was both substantially true and non-actionable opinion for Mr. Foshee to state that LFTB comes from a "low grade

10

of beef trimmings."[5] Mr. Foshee incorporates the ABC Defendants' arguments and authorities by reference herein. The term "low grade" is inherently subjective and cannot reasonably be read as a false statement of fact. *Cf. Beverly Hills Foodland, Inc.*, 39 F.3d at 196 ("'Unfair' is a term requiring subjective determination and is therefore incapable of factual proof.").

For these reasons, Counts 11 and 23 should be dismissed.

### 2. Statement that LFTB's Consistency Is "More Like Gelatin" Is Non-Actionable Opinion and Substantially True

In Counts 17 and 23, Plaintiffs allege a common law product disparagement claim for false statements and implications that LFTB is more like gelatin than beef. Compl. ¶¶ 547(c), 632. Plaintiffs allege, "[t]hese statements were false because LFTB is not gelatin. LFTB is beef." *Id.* ¶¶ 549, 632 (referring back to Counts 8 and 17). Whether the consistency of LFTB is "more like gelatin" than regular ground beef is a subjective characterization that does not state or "imply a false assertion of fact."[6] *Milkovich*, 497 U.S. at 19; *Fjelsta v. Zogg Dermatology, PLC*, 488 F.3d 804, 811 (8th Cir. 2007). Moreover, Plaintiffs have failed to state a claim because they do not allege that Mr. Foshee said or implied that LFTB was gelatin. They allege only that Mr. Foshee told Jim Avila that "it is more like gelatin." *Id.* ¶ 547(c). And the "context in which the statement was made" demonstrates that Defendants were referring to the consistency of LFTB because they were commenting on the

---

[5] *See* Sections II.B.1.c & II.B.2.c of ABC News Defendants' Motion to Dismiss BPI's Claims.

[6] *See* Section II.B.1.e of the ABC News Defendants' Motion to Dismiss BPI's Claims.

appearance of LFTB. For instance, Mr. Foshee stated that "it looks kind of like Play-Dough." Compl. Ex. 3. *See Aviation Charter, Inc. v. Aviation Research Group/US*, 416 F.3d 864, 868 (8th Cir. 2005); *Treutler v. Meredith Corp.*, 455 F.2d 255, 258 (8th Cir. 1972) ("in determining whether particular language is defamatory, the words complained of cannot be isolated and must be considered in the context of the entire television or radio broadcast. Further, the language must be interpreted in its ordinary and popular sense, rather than in a technical manner.") (internal citation omitted).

Thus, Counts 17 and 23 must be dismissed.

### 3. Statement that the Protein in LFTB Comes Mostly from Connective Tissue Is Substantially True

In Count 18, Plaintiffs allege a common law product disparagement claim for false statements that LFTB's protein comes mostly from connective tissue. Specifically, Plaintiffs allege that Mr. Foshee stated to Jim Avila that "the protein comes mostly from connective tissue, not muscle meat." Compl. ¶¶ 555(a), (b), (c), 556. Plaintiffs allege that "[t]hese statements were false because LFTB's protein does not come 'mostly from connective tissue.' LFTB's protein comes 'mostly from' muscle meat." *Id.* ¶ 557. This claim fails because, as the Supreme Court explained in *Masson*, "[m]inor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'" 501 U.S. at 517. Plaintiffs do not dispute that protein in LFTB comes from connective tissue, just that it "mostly" comes from connective tissue. As argued in the ABC Defendants' motion to dismiss, the difference in proportions of protein from connective tissue does not change the

12

"gist" of the statement in context. Mr. Foshee incorporates by reference the arguments and authorities cited in the ABC Defendants' motion.[7] For these reasons, Count 18 should be dismissed.

In Count 23, Plaintiffs allege that Mr. Foshee's statement that the protein in LFTB comes "mostly" from connective tissue falsely implies that LFTB is not beef or meat. Compl. ¶ 633 (referring back to Counts 9 & 18). This claim fails because a statement that the *protein* in LFTB comes "mostly from connective tissue" in no way implies that LFTB is not otherwise beef or meat.

### 4. Defendant Foshee Did Not Imply that LFTB Is Not Safe for Public Consumption

In Count 24, Plaintiffs allege that Mr. Foshee falsely implied that LFTB "is not safe for public consumption" in stating that "[i]t will fill you up, but it's not going to do you any good." Compl. ¶ 647. For the reasons discussed above, *supra* I.A., this comment is not actionable because it is not a statement or implication that LFTB is not safe for public consumption.[8]

### 5. Defendant Foshee Did Not Imply that LFTB Is Not Nutritious

In Count 25, Plaintiffs allege that Mr. Foshee falsely implied that LFTB is not nutritious through his statements that it's not "what the typical lay person would consider meat," Compl. ¶ 660, it's "more like gelatin" than beef, *id.* ¶ 663, its protein "comes mostly from connective tissue, and not muscle meat," *id.* ¶ 664, and

---

[7] *See* Section II.B.1.d of the ABC News Defendants' Motion to Dismiss BPI's Claims.

[8] *See* Section II.B.2.a of the ABC News Defendants' Motion to Dismiss BPI's Claims.

13

"[i]t will fill you up, but it's not going to do you any good," *id.* ¶ 665. Plaintiffs allege that "[t]hese statements were false by implication because LFTB is nutritious. LFTB is lean beef, its protein comes "mostly from" muscle meat, and it has nutritional value." *Id.* ¶ 670.

These statements arguably imply that LFTB does not have as much nutrition as regular ground beef or beef muscle. However, taken in the context of the ABC reports, Mr. Foshee's statements cannot reasonably be read to imply that LFTB is not nutritious at all. As the ABC Defendants explain, the reports in which Mr. Foshee's statements appear repeatedly state that LFTB provides nutrition and is safe. *See* Section II.B.2.b of the ABC Defendants' Motion to Dismiss BPI's Claims. Mr. Foshee incorporates by reference the arguments and authorities cited therein. For these reasons, Count 25 should be dismissed.

### D.  Plaintiffs Fail To State Claims For Libel

Libel under South Dakota law is defined as "a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye which exposes *any person* to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." SDCL § 20-11-3 (emphasis added). Libel is one of two classes of defamation defined by statute. *See* SDCL § 20-11-2 (defamation is effected by libel or slander). An action for libel protects "the personal reputation of the injured party," *Gregory's Inc. v. Hann*, 545 N.W.2d 488, 493 n.2 (S.D. 1996), whereas an action for product disparagement merely protects the value of a product, *see*

14

Restatement (Second) of Torts § 623A cmt. g. Because none of Mr. Foshee's alleged statements refers to BPI (or BPI Technologies or Freezing Machines, Inc., for that matter) or bring its personal reputation into disrepute, Plaintiffs' libel claims—all of which are duplicative of their product disparagement claims[9]—must be dismissed. Mr. Foshee incorporates by reference all of the arguments and authorities cited in the ABC Defendants' motion to dismiss. *See* Section III.A of ABC Defendants' Motion to Dismiss BPI's Claims.

Even if this Court were to find that Mr. Foshee's alleged statements support a cause of action for libel, they fail for the same reasons that the product disparagement claims fails: they are substantially true, do not bear the meanings ascribed to them, and are non-actionable opinion. *See supra* I.C.

## II.   BPI Technology And Freezing Machines, Inc.'s Claims Should Be Dismissed

BPI Technology and Freezing Machines, Inc. fail to state claims for product disparagement (under the AFPDA or common law) and libel for all the reasons discussed above. Moreover, they fail to state claims because, as the ABC Defendants have argued in their Motion to Dismiss BPI Technology and Freezing Machines Inc., they were fraudulently joined as parties and they are not the real parties in interest to any defamation or product disparagement claim. Rather than reiterate the arguments and authorities cited in the ABC Defendants' motion, Defendant Foshee incorporates them by reference here.

---

[9] *See* Count 2 (Compl. ¶¶ 400-09), Count 8 (Compl. ¶¶ 457-66), Count 9 (Compl. ¶¶ 467-74), Count 19 (Compl. ¶¶ 562-77), Count 20 (Compl. ¶¶ 578-93), Count 21 (Compl. ¶¶ 594-611).

15

## CONCLUSION

For the foregoing reasons, all claims of BPI, BPI Technology, and Freezing Machines against Defendant Kit Foshee should be dismissed with prejudice.

Respectfully submitted,

/s/ *SW Sanford*

One of Defendant Kit Foshee's Attorneys

| | |
|---|---|
| Daniel Twetten* | Steven W. Sanford |
| Elizabeth Wang* | Alex Hagen |
| LOEVY & LOEVY | CADWELL SANFORD DEIBERT |
| 312 N. May St., Suite 100 | & GARRY LLP |
| Chicago, IL 60607 | 200 W. 10th St., Suite 200 |
| (312) 243-5900 | Sioux Falls, SD 57101 |
| dan@loevy.com | (605) 336-6036 |
| elizabethw@loevy.com | ssanford@cadlaw.com |
| *Pro hac vice motions pending | ahagen@cadlaw.com |

## CERTIFICATE OF SERVICE

      I hereby certify that on this day I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following counsel:

Mr. Daniel L. Hartnett
Ms. Sabrina L. LaFleur Sayler
Crary Huff Ringgenberg Hartnett & Storm, P.C.
711 Sioux Point Road, Suite 200
Dakota Dunes, SD  57049
E-mail:  dhartnett@craryhuff.com and ssayler@craryhuff.com
***Attorneys for Plaintiffs***

Mr. Vince M. Roche
Mr. Edwin E. Evans
Ms. Elizabeth S. Hertz
Davenport, Evans, Hurwitz & Smith, LLP
206 West 14th Street, PO Box 1030
Sioux Falls, SD  57101-1030
E-mail:  vroche@dehs.com, eevans@dehs.com and ehertz@dehs.com
***Attorneys for Defendants Gerald Zirnstein and Carl Custer***

Mr. Scott N. Heidepriem
Mr. Ronald A. Parsons, Jr.
Ms. Shannon Falon
Johnson, Heidepriem & Abdallah, LLP
PO Box 2348
101 S. Main Avenue, Suite 100
Sioux Falls, SD  57104
E-mail:  scott@jhalawfirm.com, ron@jhalawfirm.com and shannon@jhalawfirm.com
***Attorneys for Defendants American Broadcasting Companies, Inc., ABC News, Inc., Diane Sawyer, Jim Avila, and David Kerley***

      Dated:  October 31, 2012

                                  /s/   SW Sanford

                            One of Defendant Foshee's Attorneys